**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, JANET DOE, and JOHN DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:25-cv-10147 |
| v. | ) | |
| | ) | Hon. Mary M. Rowland |
| VERADIGM LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT VERADIGM LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Matthew C. Wolfe
Tara D. Kennedy
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

STATEMENT OF FACTS AND ALLEGATIONS ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. Each Of Plaintiffs' Claims Fails Because They Do Not Allege Any Facts to Plausibly Support that Veradigm Disclosed Private Health Information. ..... 4

II. The Complaint Fails To State A Claim Under The ECPA. ..... 6

A. Plaintiffs Fail to State a Claim Under the ECPA Because Veradigm Cannot Intercept Communications to Which it is a Party. ..... 7

B. The Crime-Tort Exception Does Not Apply. ..... 9

1. Plaintiffs do not plausibly allege Veradigm's *purpose* was to commit a crime or tort. ..... 9

2. Plaintiffs expressly allege a permissible purpose. ..... 11

3. Plaintiffs do not allege a "separate and independent" crime or tort. ..... 12

C. Plaintiffs Have Not Alleged That Veradigm Intercepted "Contents." ..... 13

III. Plaintiffs Fail to State a Claim Under the California Invasion of Privacy Act. ..... 14

A. The Complaint Contains No Factual Allegations to Support a CIPA Claim. ..... 14

B. California Doe has not alleged a Violation of CIPA § 631(a). ..... 15

1. No intentional wiretapping occurred to satisfy § 631(a)'s first clause. ..... 15

2. California Doe does not plausibly allege that anyone read the "contents" of his communications while "in transit." ..... 16

C. California Doe Fails to State a Claim Under CIPA § 632(a). ..... 17

D. California Doe Fails to State a Claim Under CIPA § 638.51. ..... 17

IV. Plaintiffs' Negligence Claim Must be Dismissed Because They Do Not Allege Any Compensable Injury Available for Negligence. ........ 18

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................15, 16

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Jan. 5, 2023)....................17

*Benton v. Little League Baseball, LLC*,
181 N.E.3d 902 (Ill. App. Ct. 2020)....................20

*Berry v. City of Chicago*,
181 N.E.3d 679 (Ill. 2020)....................18, 19, 20

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................9, 11, 12, 13

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal. Super. June 18, 2025)....................18

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
887 F.3d 803 (7th Cir. 2018)....................19

*Cochran v. Securitas Servs. USA, Inc.*,
93 N.E.3d 493 (Ill. 2017)....................20

*Cooney v. Chi. Public Schools*,
943 N.E.2d 23 (Ill. App. Ct. 2010)....................18

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................10

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)....................16

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995)....................10

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025)....................11, 12, 13

*Doe v. Davita, Inc.*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024)....................6, 14

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)....................15, 16, 17

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................11, 12

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................11

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*,
2025 WL 2807673 (D. Mass. Sep. 30, 2025)....................10, 13

*First Springfield Bank & Trust v. Galman*,
720 N.E.2d 1068 (Ill. 1999)....................18

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025)....................13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................16

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)....................6

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................5

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002)....................19

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sep. 26, 2013)....................17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................13, 16

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011)....................19

*In re Zynga Privacy Litig.*
750 F.3d 1098 (9th Cir. 2014)....................13

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016)....................19

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................18

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 7

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .......... 6

*Manley v. Law*,
889 F.3d 885 (7th Cir. 2018) .......... 20

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 15

*McManus v. Tufts Med. Ctr., Inc.*,
2025 WL 2778025 (D. Mass. Sep. 29, 2025) .......... 12

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1982) .......... 19

*Nguyen v. Abbott Lab'ys, Inc.*,
2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) .......... 5

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .......... 13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 5

*Planned Parenthood Fed'n of Am. Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 9, 10

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025) .......... 11

*Rodriguez v. ByteDance, Inc.*,
2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) .......... 17

*Schweihs v. Chase Home Fin., LLC*,
77 N.E.3d 50 (Ill. 2016) .......... 20

*Sloan v. Anker Innovations Ltd.*,
711 F. Supp. 3d 946 (N.D. Ill. 2024) .......... 7, 9

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) .......... 10

*Tobey v. Chibucos*,
890 F.3d 634 (7th Cir. 2018) .......... 8

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)....................9

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011)....................14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023)....................15

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sep. 30, 2024)....................11

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013)....................3

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................7, 8, 9

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020)....................9

**Statutes**

18 U.S.C. § 2510(8)....................13

18 U.S.C. § 2511(1)....................6, 9, 10

18 U.S.C. § 2511(2)....................7, 9, 10

18 U.S.C. § 2520(a)....................6

Cal. Pen. Code § 631....................15, 16

Cal. Penal Code § 632....................17

Cal. Penal Code § 637.2....................15

Cal. Penal Code § 638.50....................17

Cal. Penal Code § 638.51....................17, 18

California Penal Code § 631 *et seq.*....................15

**Other Authorities**

45 C.F.R. § 160.103....................4

Fed. R. Civ. P. 12(b)(6)....................2, 6

## INTRODUCTION

Throughout the country, plaintiffs have filed hundreds of putative class actions attempting to collect massive damages awards from any healthcare-related business that uses common website analytics and marketing tools. Plaintiffs have done so by invoking a decades-old criminal statute that predates the internet. Here, Plaintiffs focus on Google Analytics. When a user visits a website that contains Google Analytics, limited information about the visit potentially can be sent to Google, which then uses the data to allow the website provider to analyze interactions with its website and assist with advertising. These analytics tools are ubiquitous and used by countless businesses and government agencies to improve functionality and advertising on their websites.

Defendant Veradigm LLC ("Veradigm") is a healthcare technology and analytics company that offers a variety of software and services. Among these are personal health record systems used by patients across the country to access and manage their healthcare information online. The system at issue here, and the most commonly used, is branded "FollowMyHealth" ("FMH"), and is available in a web-based or mobile application format. In FMH, the data is owned by the patients, and patients voluntarily choose to use FMH. Plaintiffs allege that Veradigm's use of Google digital marketing tools on FMH caused their browsers or mobile applications to send "Protected Health Information" ("PHI") to Google. According to Plaintiffs, Veradigm's use of Google software on FMH resulted in criminal disclosure of information protected under HIPAA, which they allege supports claims under the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA"), and for negligence. These allegations are baseless.

Plaintiffs' Amended Complaint ("Complaint" or "FAC") suffers from a variety of defects, but one cuts across all three claims—the Complaint is devoid of basic factual support. Despite consisting of 75 pages and more than 274 paragraphs, the Complaint boils down to one basic premise: Veradigm allegedly used Google Analytics to analyze usage of FMH to help improve

that solution.[1] The Complaint says almost nothing about the Plaintiffs. Indeed, it's not even clear from the Complaint how many Plaintiffs there are, as the caption lists three, but the contents reference four. Nor does the Complaint offer any concrete example showing Plaintiffs' theory of how the tracking technology operated. Instead, it relies on generic discussions of how Google's technology *might* work. The Complaint, which, based on the above deficiencies and others, seems to be copy-and-pasted from other similar complaints, fails to meet basic pleading standards and should be dismissed under Rule 12(b)(6).

Setting aside the above pleading deficiencies, Plaintiffs' claims also fail as a matter of law. *First*, Plaintiffs have no viable claim under the ECPA, a one-party consent statute, because Veradigm was an intended recipient of the communications at issue, and Plaintiffs fail to plausibly allege that the crime-tort exception applies or that the content of communications was transmitted. *Second*, Plaintiffs' CIPA claim fails because they offer no facts about the sole California Plaintiff, and each theory fails as a matter of law. *Third*, Plaintiffs fail to state a negligence claim because they do not allege any sufficient injury. Thus, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS

Veradigm provides information technology and analytics services to various stakeholders in the healthcare space, including providers, nationwide. Among those services, Veradigm provides web-based and mobile application personal health record systems branded as FollowMyHealth. *Id.* ¶¶ 1, 2, 22 (the web-based and mobile version are referred to jointly as "FMH" herein). Veradigm's FMH solutions allow patients to manage their healthcare online across providers, such as by viewing medical records, scheduling appointments, paying bills, or communicating with providers. *Id.* ¶¶ 2, 28. Patients are not required to use FMH. *See id.* ¶ 27.

[1] The Complaint ends with ¶ 274, but several paragraph numbers are repeated: ¶¶ 50–53 and ¶¶ 174–91.

Plaintiffs' allegations boil down to a simple proposition: Veradigm embedded Google Analytics source code on FMH (*see, e.g.*, *id.* ¶¶ 50 (p.14), 64), and Google Firebase Code on the mobile application (which they do not describe) (*id.* ¶ 53 (p.17)), "for advertising and marketing purposes" (*id.* ¶ 42) and to obtain analytics data Veradigm could use to "optimize" its websites and products (*id.* ¶¶ 81, 124). Much of the Complaint provides a general description of how tracking technology works, and Google's operations. *See id.* ¶¶ 70–114, 126–54.[2]

Plaintiffs are purportedly four patients who elected to use Veradigm's FMH solution. Although Plaintiffs allege they did not provide consent for Veradigm to share information with Google (FAC ¶¶ 119, 123, 156), notably absent from the Complaint is any reference to Veradigm's Terms of Use ("TOUs") and Privacy Policy, which Plaintiffs would have been required to accept when voluntarily signing up to use FMH. Both the TOUs and Privacy Policy have been in place since November 13, 2019, and are linked at the bottom of every FMH sign-in page. The TOUs provide notice that FMH "may use De-identified Data that is taken from the Personal Information you provide and combine it with other anonymous data to create what is referred to as 'Aggregate Data' that may be disclosed to third parties."[3] The Privacy Policy provides further details about FMH's use of information and notice that aggregated data is shared with third parties.[4]

When it comes to their interactions with FMH, Plaintiffs have little to say. They allege where they reside (three in Pennsylvania and one in California), where they are a patient, how long

[2] Oddly, Plaintiffs also refer to Facebook throughout the Complaint, *see* FAC ¶¶ 128, 139, 140–41, 153–54, 230–33, 238, 244, 260–62, despite not alleging that Veradigm used Facebook tracking technology.

[3] *FollowMyHealth Universal Health Record Terms of Use*, https://www.followmyhealth.com/UseDocuments/TermsOfUse (Nov. 13, 2019). Although it does not need to do so to decide this Motion, the Court may take judicial notice of the TOUs and Privacy Policy because whether Plaintiffs consented to data collection is central to the Complaint and both policies are referred to in the Complaint. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[4] *Privacy Policy*, followmyhealth.com/UseDocuments/PrivacyPolicy (Nov. 13, 2019).

they have been registered to use FMH (using vague descriptions like "more than four years"), their medical conditions, and generally describe how they used FMH, such as to view test results, doctor's notes, or appointment information, and research treatment information. *See* FAC ¶¶ 13–16, 117–22. Only Jane Doe and John Doe allege they began receiving advertisements seemingly related to their medical conditions after using FMH. *Id.* ¶¶ 13, 15. Plaintiffs generically allege that the information they input into FMH was shared with Google, along with IP addresses, unique persistent cookie identifiers, device identifiers, account numbers, URLs, and browser-fingerprints, but none offers any actual example of the data they shared, or how. *See id.* ¶¶ 49–53. Even if this were true (which it is not), it would not be enough to give rise to Plaintiffs' claims.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted).

## ARGUMENT

### I. Each Of Plaintiffs' Claims Fails Because They Do Not Allege Any Facts to Plausibly Support that Veradigm Disclosed Private Health Information.

The core assertion underlying all of Plaintiffs' claims is that when they used FMH, their PHI (as defined under HIPAA, 45 C.F.R. § 160.103) was disclosed to Google. Yet this conclusion is not supported by any factual allegations. Instead, despite its 75 pages, the Complaint offers only vague and near-incomprehensible descriptions of the alleged transmission of information.

More specifically, Plaintiffs offer no actual examples of how their PHI was allegedly shared with Google. Each Plaintiff claims generally that they entered data in FMH about their conditions or treatments that was shared with Google, but do not allege *how* the alleged disclosure

happened or exactly what information about their conditions and treatments they entered or was purportedly transmitted. *See, e.g.*, FAC ¶¶ 117, 119, 121. Plaintiffs' allegations amount to mere conclusions, which they try to obfuscate by naming specific medical conditions. Notably, the Complaint does not provide a single example of a URL that was purportedly shared, or a screenshot of the technology in action, not even for a hypothetical user. The Court cannot assess from these conclusory assertions what information Plaintiffs communicated to FMH, the contents of what they allege was disclosed to Google, nor how or when it was disclosed. Without more, it is impossible to determine from the pleadings if the allegedly disclosed information even revealed where Plaintiffs were a patient, much less anything about their medical conditions or treatment.

Courts in this Circuit and around the country have held that these sorts of vague allegations and mere references to categories of protected information are insufficient to state a claim. For example, a court in the Central District of Illinois recently dismissed an ECPA claim brought by a plaintiff who alleged she had used defendant's website to "find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more." *Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025). The court held those allegations "lack[ed] the detail necessary to plausibly" sustain an ECPA claim premised on HIPAA. *Id*. And allegations that defendant disclosed information like "status as a patient" and "patient portal activity" were also insufficient to state an ECPA claim when not accompanied by details as to what information was disclosed that would show patient status or about plaintiff's specific activity. *Id. See also Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753, at *5 (N.D. Ill. Aug. 8, 2025) (dismissing ECPA claim where plaintiffs explained "the technology behind the tracking tools in great detail," but failed to "shed light on whether each plaintiff's disclosures plausibly amount to [PHI]"); *Nienaber v.*

*Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) ("two sentences" describing "actual engagement" with website insufficient to support any claim); *Doe v. Davita, Inc.*, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing CIPA claim for same reasons).

Plaintiffs' allegations here are similarly vague as to the type of information they provided in FMH and what is alleged to have been transmitted to Google (or to any of the other unidentified "third parties" Plaintiffs intermittently refer to). Plaintiffs' failure to provide facts in support of their contention that PHI was shared defeats each of their claims under Rule 12(b)(6).

## II. The Complaint Fails To State A Claim Under The ECPA.

Plaintiffs allege that Veradigm violated the ECPA when Google tracking technology installed on FMH "intercepted and divulged" the contents of Plaintiffs' communications with FMH "to persons or entities other than an addressee or intended recipient." FAC ¶ 200. The ECPA imposes criminal liability upon one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication," 18 U.S.C. § 2511(1)(a), or who intentionally "discloses" or "uses" the contents of an intercepted electronic communication, "knowing or having reason to know that the information was obtained through [an] interception." *Id.* § 2511(1)(c)-(d). The ECPA also provides for civil liability when an "electronic communication [was] intercepted, disclosed, or intentionally used in violation of" the statute. *Id.* § 2520(a). As a matter of law then, Plaintiffs' theory cannot support a civil claim unless the same conduct would also support a federal felony charge.[5]

---

[5] Plaintiffs' theory therefore urges the absurd result that any person involved in the intentional use of ubiquitous web tracking technology on a healthcare website may face felony charges under the ECPA. In construing the statute, the Court must avoid this type of absurd result. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (interpretation producing absurd result to be avoided if alternative consistent with legislative purpose available). Moreover, and further requiring narrow construction, because the ECPA imposes criminal penalties, under the rule of lenity any ambiguities in the statute must be resolved in Veradigm's favor. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (explaining rule of lenity applies to civil claims arising out of statutes with criminal applications). The rule of lenity applies equally to CIPA.

Under the plain language of the statute, an "interception" is a prerequisite to liability, with only a narrow exception, the "crime-tort exception" discussed in Section II.B below. Plaintiffs' ECPA claim fails because they have not shown any unlawful "interception" or that the crime-tort exception applies. They further fail to allege the disclosure of contents as required to state a claim.

### A. Plaintiffs Fail to State a Claim Under the ECPA Because Veradigm Cannot Intercept Communications to Which it is a Party.

The ECPA is a one-party consent statute, meaning an alleged "interception" by a party to the communication is not unlawful. The law expressly provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). The ECPA does not define "party," but courts consider "who the intended recipient of the communication was." *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023). Further, if the communication "necessarily requires" a defendant's involvement, the defendant is a party. *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024); *see also Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) ("the relevant inquiry is whether the defendant is a participant in the conversation, as opposed to a non-participant that uses other means to gain access").

Veradigm was a party to the "communications" at issue here. There can be no dispute that Veradigm's involvement was necessarily required, as Plaintiffs would have no ability to conduct any of the healthcare-related activities they allege without Veradigm's FMH solution. Indeed, the screenshot of the FMH mobile application in the Complaint demonstrates the app was plainly labeled as "FollowMyHealth", a Veradigm LLC product. FAC ¶ 52 (p.17). And, although Plaintiffs fail to provide any facts alleging how they accessed the web-based version of FMH, the Independence Health System (where three Plaintiffs allege they were patients) similarly provides

clear notice that its portal is powered by FMH and includes obvious links to the FMH TOUs and Privacy Policy in the customary location at the bottom of the website:[6]




Likewise, there can be no dispute that Veradigm was an intended recipient of Plaintiffs' communications, along with their healthcare providers. Plaintiffs do not allege they were unaware that they were using FMH and therefore sending information to Veradigm; indeed, they expressly *admit* Veradigm was an intended recipient. *See* FAC at p.19 ("C. What Happens When Patients Communicate with Veradigm's Patient Portals"); *id.* ¶ 113 (information provided "to Veradigm"); *id.* ¶ 146 (communications "exchanged" "with Veradigm"); *id.* ¶ 200 (Plaintiffs "interacted with Veradigm's Patient Portals"); *Id.* ¶ 213 (Plaintiffs "consented to Veradigm acquiring their" PHI).

Thus, this case is analogous to *Zak*, where plaintiffs alleged the Bose headphone app "intercepted" information about what music they were streaming from Spotify to their headphones.

---

[6] The Court may take judicial notice of this website. *See supra* n.3; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) (judicial notice proper for public records not subject to reasonable dispute). Latrobe and Frick Hospitals, the other providers referenced by the Pennsylvania Plaintiffs are part of the Independence Health System and utilize the same FMH page. *See* https://www.independence.health/patients-visitors/patient-information/patient-portal/ (stating patients of Frick/Latrobe will use FMH with link).

2019 WL 1437909, at *1–2. The court dismissed the ECPA claim, holding Bose was a party to the "communications" because its application was "a known participant in—and intended recipient of—the communication" about the music-streaming data. *Id.* at *4. *See also Zak v. Bose Corp.*, 2020 WL 2762552, at *3 (N.D. Ill. May 27, 2020) (dismissing re-pleaded ECPA claim for same reason); *Sloan*, 711 F. Supp. 3d at 957 (defendant deemed party when "communication" was sent to its platform). Here, Plaintiffs similarly knew Veradigm was a participant in any communications sent to FMH. In sum, Plaintiffs' assertion that Veradigm was not a party to the communications (FAC ¶¶ 205, 208) is contradicted by case law, their own allegations, and common sense. And because Veradigm was a party to the communications, it did not commit any unlawful "interception" under the ECPA.

### B. The Crime-Tort Exception Does Not Apply.

In an effort to avoid the fact that no unlawful interception occurred, Plaintiffs invoke the "crime-tort exception" to ECPA's one-party consent rule. FAC ¶¶ 209–10. The crime-tort exception must be narrowly construed. *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). To invoke the exception, Plaintiffs must plausibly allege Veradigm (1) acted ***with the purpose*** to commit (2) an independent crime or tort, separate from the interception itself. *See* 18 U.S.C. § 2511(2)(d); *Planned Parenthood Fed'n of Am. Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Plaintiffs fail to allege either element.

#### 1. Plaintiffs do not plausibly allege Veradigm's *purpose* was to commit a crime or tort.

In analyzing whether the crime-tort exception applies the Court's inquiry can start and stop with the statute's language. Under the ECPA, the act of interception must be done *intentionally*, 18 U.S.C. § 2511(1)(a), but for the crime-tort exception to overcome single-party consent, there is a separate and additional mens rea requirement—that the interception be done "*for the purpose of*

*committing* any criminal or tortious act." *Id.* § 2511(2)(d) (emphasis added). Congress's repeated use of "intentionally" in § 2511(1)(a)–(d), evidences its deliberate choice to then use "purpose" in §(2)(d). *See Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *10 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025). As the Supreme Court explained, "[p]urpose is the most culpable" mental state "and the hardest to prove" requiring that one "consciously desires" a result. *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023).

Thus, if the purpose for an interception was lawful, then the single-party exception applies. The Seventh Circuit applied this construction in *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345 (7th Cir. 1995). There, the defendant news station dispatched people equipped with undercover cameras posing as patients to several eye care providers. *Id.* at 1348. Despite plaintiff plausibly alleging a defamation claim, the court nonetheless found the crime-tort exception inapplicable, and explained:

> The defendants did not order the camera-armed testers into the Desnick Eye Center's premises in order to commit a crime or tort. Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely. But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine. The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers.

*Id.* at 1353. *See also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Planned Parenthood*, 54 F.4th at 1135–36 (in assessing application of the crime-tort exception the "focus is not upon whether the interception itself violated another law" but "upon whether the purpose for the interception—its ***intended use***—was criminal or tortious") (citation omitted).

The question here then is whether Plaintiffs adequately allege that Veradigm's *purpose* in using Google's technology was to act criminally or negligently. The answer is plainly no. Plaintiffs breezily allege that Veradigm intercepted their communications "for the purpose of committing criminal and tortious acts" namely, violating HIPAA and breaching its fiduciary duties. FAC ¶ 209. But they offer no support for this conclusion and instead focus on Veradigm's "intentional" disclosure of information to Google, which they allege it knew would violate HIPAA. That is insufficient. *See Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) ("A recitation of the elements that the Defendant's purpose was tortious or criminal, without alleging any facts—independent of the interception itself—that it was done for a criminal or tortious purpose, will not do."). Even if Veradigm's conduct violated HIPAA,[7] Plaintiffs still have not alleged that Veradigm had an unlawful *purpose*, and their focus on "intent" to share information with Google does not properly construe the exception's language. *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) ("[I]t is not enough that the alleged disclosure may constitute, or result in, a tortious act in violation of federal law. Instead, the language is clear that the interception must be "*for the purpose of committing*" a tortious act).[8]

**2. Plaintiffs expressly allege a permissible purpose.**

Plaintiffs' apparent theory—that Veradigm collected patient information *for the purpose* of violating HIPAA—is not only implausible on its face, but also contradicted by their own

[7] It didn't. Among other reasons, health data stored in FMH has been released by the health care provider to the patient and therefore belongs to the patient, not a HIPAA covered entity, and therefore is not PHI as defined by HIPAA. Veradigm will demonstrate this through evidence later in the case if necessary.

[8] *See also, e.g.*, *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025), *appeal dismissed*, Case No. 25-1420 (4th Cir. Oct. 31, 2025) (dismissing ECPA claim for failure to plausibly allege defendant's purpose was to breach HIPAA); *Williams v. TMC Health*, 2024 WL 4364150, at *3 (D. Ariz. Sep. 30, 2024) (allegations solely supported lawful purpose); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *9 (N.D. Cal. Apr. 11, 2024) (Congress "could have chosen to define the exception in terms of interception of oral communications *resulting* in a tortious or criminal act") (quoting *Caro*, 618 F.3d at 99–100).

allegations, which repeatedly allege that Veradigm used Google technology to "optimize" its website, marketing, and product designs, "bolster" advertising strategies, and for "commercial advantage." FAC ¶¶ 81, 124, 202, 209. As many courts have recognized, there is nothing unlawful about these types of objectives. The Central District of Illinois recently dismissed an ECPA claim in a similar healthcare pixel lawsuit because, by plaintiff's own account, the defendant used tracking technology to "benefit [defendant] and its marketing and advertising purposes… not *for the purpose* of knowingly committing a violation of the HIPAA." *Genesis Health Sys.*, 2025 WL 1000192, at *9; *see also, e.g.*, *Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (finding crime-tort exception did not apply in part because plaintiff alleged "contradictorily, that the Defendant shared the information with third parties 'for the purpose of creating targeted online advertisements and enhanced marketing services', not tortious or criminal conduct"); *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3–4 (D. Mass. Sep. 29, 2025) (similar).[9]

In short, Plaintiffs' allegations at most suggest Veradigm's *purpose* in allegedly intercepting communications with FMH was to improve its products and websites, and for marketing and commercial use, not to violate HIPAA or any other law. Thus, Plaintiffs fail to plausibly invoke the crime-tort exception and their ECPA claim should be dismissed.

**3. Plaintiffs do not allege a "separate and independent" crime or tort.**

Nor do Plaintiffs identify any *independent* criminal or tortious conduct beyond "the alleged wiretapping itself" that would violate HIPAA or constitute a breach of fiduciary duty, as they must to invoke the crime-tort exception. *See Caro*, 618 F.3d at 100. As numerous courts have held, including in similar contexts, the crime-tort exception is not triggered when the tortious conduct

[9] Veradigm acknowledges that several courts in this district have found the crime-tort exception applied in similar circumstances, but those rulings depart from the statutory language and fail to correctly focus on the defendant's *purpose* in making the alleged interception.

"is the alleged wiretapping itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *see also Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12–14.

Where, as here, the "interception" that provides the basis for the alleged ECPA violation (use of Google Analytics) is the same act that provides the basis for the purported HIPAA violation (use of Google Analytics), there is no independent crime or tort. Several courts have recently dismissed ECPA claims in similar tracking technology healthcare cases on this basis. *See, e.g.*, *Chestnut Health Sys*, 2025 WL 1616635, at *12 (that plaintiffs "complain about the interception itself, and not an independent act, is made clear by the fact that" they allege defendant's criminal or tortious act "occurred 'simultaneously' and 'contemporaneously' with the interception"); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 n.3 (D. Mass. June 24, 2025) (HIPAA violation not a "further impropriety" because it was not an act "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits") (quoting *Caro*, 618 F.3d at 98); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (similar). Similarly, Plaintiffs here allege "simultaneous" collection and disclosure. FAC ¶ 114. Accordingly, they fail to plead a crime or tort independent of the interception itself, which is alone fatal to their ECPA claim.

### C. Plaintiffs Have Not Alleged That Veradigm Intercepted "Contents."

Plaintiffs also fail to *plausibly* allege facts showing that the "contents" of any "communication" were acquired by any unauthorized party. "Contents" means "information concerning the substance, purport, or meaning" of the communication. 18 U.S.C. § 2510(8). Courts have interpreted "contents" as referring to "the intended message conveyed by the communication" and not including "record information regarding the characteristics of the message that is generated in the course of the communication" such as typical routing/record information. *In re Zynga Privacy Litig.* 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs baldly assert

throughout the Complaint that Veradigm shared their PHI or the "contents" of communications but do so only in a conclusory and unsupported fashion. As noted above (*supra* § I), Plaintiffs fail to allege any specific actions they took within FMH, such as buttons they clicked or messages they sent, not to mention any "substance" of the purported communications allegedly transmitted to Google that would be sufficient to support a claim that PHI was shared. Data points like IP addresses are not sufficient as those are record/routing information, not contents as defined by ECPA. And, although Plaintiffs contend that shared URLs conveyed substantive information (FAC ¶ 51 (p.16)) they have not identified a single URL they allegedly visited.

## III. Plaintiffs Fail to State a Claim Under the California Invasion of Privacy Act.

### A. The Complaint Contains No Factual Allegations to Support a CIPA Claim.

As a threshold matter, the Complaint contains no factual allegations to support a CIPA claim. Here, the only plausible candidate to bring a CIPA claim is the John Doe residing in California ("California Doe"). *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1027 (N.D. Cal. 2011) (noting it has been "clearly establish[ed] that a non-California defendant cannot be liable to a non-California plaintiff for violations of the CIPA"). But the only reference to California Doe in the Complaint states that he "has been a registered user of the Veradigm Patient Portal operated by Veradigm for more than four years and has regularly used it to review medical records and doctor notes, including records related to psychiatric treatment." FAC ¶ 16. This vague allegation contains no details regarding the specific interactions he had with FMH, what information was disclosed or how, any injuries he suffered as a result, nor any conduct occurring in California. Nor is California Doe included in the caption, the introductory paragraph, or the paragraphs purporting to plead additional allegations about Plaintiffs' interactions with FMH (*id.* ¶¶117–22). The lack of allegations by California Doe makes it impossible to assess the basis of the CIPA claim, which alone warrants dismissal. *See Davita Inc.*, 2024 WL 1772854, at *2.

In addition, there are several dispositive legal problems with the purported CIPA claim.

**B. California Doe has not alleged a Violation of CIPA § 631(a).**

CIPA, codified at California Penal Code § 631 *et seq.*, criminalizes wiretapping and eavesdropping on confidential communications and provides for criminal and civil liability. *See* Cal. Penal Code § 637.2(a). CIPA has become a common source of website technology litigation, but as one court recently noted, "[t]he state of affairs with CIPA is untenable," the statutory language is a "total mess," and courts have issued "conflicting rulings" leaving companies with no way of telling whether their online activities will subject them to liability. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (applying rule of lenity to CIPA).

Section 631(a) is a perfect example of this "mess," as it involves four different "clauses" that are independent bases for violation of the statute, which prohibit three different "patterns of conduct." *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 975 (C.D. Cal. 2023). The prohibited behaviors are (1) intentional wiretapping, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained from engaging in activities prohibited under (1) or (2). *Id.* Section 631(a) also contains a fourth prohibition against aiding or conspiring with any person in violating clauses (1) through (3). *Id.* Plaintiffs' CIPA claim is premised on a theory that Veradigm violated the *fourth* clause of § 631(a) by "aiding, agreeing with, employing, or conspiring with' a third party" to learn the contents of Plaintiffs' communications "while in transit." FAC ¶ 226. To bring a claim under the fourth clause, California Doe must demonstrate that clause one or two was violated. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

**1. No intentional wiretapping occurred to satisfy § 631(a)'s first clause.**

Like the ECPA, CIPA exempts from liability any person who is a party to the communication. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, at *5 (C.D. Cal. 2024),

*on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024). As set forth above in § II.A, Veradigm was a party to the communications and thus cannot be liable under CIPA § 631.

Further, courts "have consistently held" that § 631's first clause "applies only to 'telegraph and telephone wires, lines, cables, or instruments,' and not to internet connections." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, *6 (S.D. Cal. Oct. 24, 2023) (collecting cases). This is true even where a plaintiff used his smartphone to access a website, so long as the smartphone was used as a computer. *Id.* Thus, California Doe cannot base his CIPA claim on § 631(a)'s first clause.

**2. California Doe does not plausibly allege that anyone read the "contents" of his communications while "in transit."**

To state a claim under clause two, California Doe must plausibly allege that the "content" of his communication was read or learned while the communications were "in transit." Cal. Pen. Code § 631(a). He fails to establish either requirement.

***Content of the communication.*** The term "contents" of a communication under CIPA has been held to have the same meaning as "contents" under the ECPA. *Eating Recovery Ctr.*, 2025 WL 2971090, at *4. Thus, California Doe must allege enough detail about his communications to plausibly show that the interception was of something more than mere record information like basic "dialing, routing, addressing, or signaling" information. *In re Google*, 806 F.3d at 137. *See also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1051–52 (S.D. Cal. 2023) (contact information, geolocation, and details about "when and how users interact" do not qualify as contents). As discussed above, California Doe fails to allege any facts at all about his specific activities in FMH and so fails to plausibly allege that contents were intercepted. *See id.* at 1051.

***While in Transit.*** Any § 631(a) claim further fails because California Doe must allege that Veradigm or Google "read, attempted to read, or attempted to learn the contents" of his communications *during* their transmission. *Eating Recovery Ctr.*, 2025 WL 2971090, at *5.

Reading or learning contents requires "'some effort at understanding the substantive meaning' of the communication." *Id.* Here, California Doe alleges Google's technologies "collect, store, and transmit user data" FAC ¶ 33, not that the technology allowed any entity to actually read or learn the meaning of communications while they were in transit. Indeed, Plaintiffs describe two distinct communications: one between themselves and Veradigm, and a second transmission to Google. *See id.* ¶¶ 62, 64 (Veradigm "placed the content of that communication in storage" and after it was stored "redirected patients' information."). Courts have dismissed CIPA claims on this basis. *See, e.g.*, *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 5, 2023).

**C. California Doe Fails to State a Claim Under CIPA § 632(a).**

To prevail on a CIPA § 632 claim, California Doe must prove "(1) an electronic recording of or eavesdropping on (2) a 'confidential communication'" through the use of an electronic amplifying or recording device. *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sep. 26, 2013). He only offers wholly conclusory assertions that Veradigm aided Google "to secretly record the contents" of communications and that every type of technology used was an "intercepting device," (FAC ¶¶ 233–44), which this court need not credit. This alone warrants dismissal. *See Rodriguez v. ByteDance, Inc.*, 2025 WL 2495865, at *7 (N.D. Ill. Aug. 29, 2025). California Doe also fails to allege the existence of a "confidential" communication. Although Plaintiffs freely use "PHI" and "contents" to give the false impression that actual patient-doctor communications were shared, California Doe's allegations don't support any such conclusion. *See supra* § I, § II.C.

**D. California Doe Fails to State a Claim Under CIPA § 638.51.**

CIPA § 638.51 provides that a person generally may not install or use a pen register or trap and trace device without first obtaining a court order. By definition, a "trap and trace device" captures identifying information about a communication "but not the contents." Cal. Penal Code § 638.50(c). Here, the core allegations are that Veradigm disclosed Plaintiffs' IP addresses, third

party cookie data, and device configurations. FAC ¶¶ 249, 264. But the collection of an IP address "occurs when any user accesses any website." *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (noting IP addresses can also provide device and browser information). Because IP addresses are collected any time a user accesses a website, courts have held that such collection is not a basis to expand the purpose of § 638.51, which "did not intend to criminalize the process by which all websites communicate with all users who choose to access them." *Casillas*, 2025 WL 2161288, at *2. The conclusory nature of California Doe's allegations about the data disclosed further warrants dismissal of this theory.

## IV. Plaintiffs' Negligence Claim Must be Dismissed Because They Do Not Allege Any Compensable Injury Available for Negligence.

To plead a negligence claim,[10] Plaintiffs must state facts sufficient to allege that: (1) Veradigm owed a duty to them, (2) it breached that duty, and (3) the breach of the alleged duty was the proximate cause of (4) a legally recognized injury. *See First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999); *Cooney v. Chi. Public Schools*, 943 N.E.2d 23, 27 (Ill. App. Ct. 2010). For the reasons below, Plaintiffs do not plausibly allege any legally recognized, compensable injury proximately caused by Veradigm's negligence.

"The long-standing and primary purpose of tort law is not to punish or deter" the creation of risk "but rather to compensate victims when the creation of risk tortiously manifests into harm." *Berry v. City of Chicago*, 181 N.E.3d 679, 688 (Ill. 2020). "[T]here is little justification for imposing civil liability on one who only creates a *risk* of harm to others." *Id.* (emphasis in original). Requiring actual harm to bring a negligence claim "establishes a workable standard for judges and

[10] Illinois law applies pursuant to the FMH TOUs; additionally, Veradigm is not aware of any significant conflict between Illinois law and any other state's law that arguably may apply to the negligence claim.

juries . . . protects court dockets from becoming clogged . . . and reduces the threat of unlimited and unpredictable liability." *Id*. Thus, to sue in negligence, actual, tangible bodily harm is required. *Id*. at 689. Accordingly, in *Berry*, the Illinois Supreme Court held that the plaintiffs could not sue in negligence for the increased risk of health issues caused by drinking lead-contaminated water, even though all parties recognized that drinking such water does increase risk. *Id*. Many other cases are in accord. *See id.* at 688 (discussing cases); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law.").

Plaintiffs do not allege they suffered bodily harm. Rather, they claim that "as a direct and traceable result of Veradigm's negligence" they "have suffered damages, including monetary damages, increased risk of future harm, loss of privacy, anxiety, and worry." FAC ¶ 184 (p.64).[11] They also reference "improper disclosure" and "lost value of their PHI," and lost time and money in mitigating the disclosure. *Id.* ¶ 185. Alone, none of these harms supports a negligence claim.

As to monetary damages, in Illinois, a plaintiff cannot recover for solely economic loss under a theory of negligence. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982); *see also Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (dismissing attempt to recover "extracontractual" economic damages in case arising from data incident); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528–31 (N.D. Ill. 2011) (dismissing negligence claim in a data breach case because it was barred by the economic loss doctrine); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071 (C.D. Ill. 2016) (same). Rather, negligence claims seek to compensate the plaintiff for tangible bodily injury or property damage. *Berry*, 181 N.E.3d at 687 ("a cause of action in tort exists only if the defendant

[11] In another apparent copy-and-paste error, in paragraph 220 Plaintiffs also seek the costs of purchasing privacy-monitoring services, but no Plaintiff actually alleges that they bought any such services.

tortfeasor injures or inflicts harm on the plaintiff"). Plaintiffs make no effort to link the "monetary damages" they seek to either tangible bodily injury or property damage, because they can't.

Nor can a plaintiff recover in negligence for "increased risk of future harm, loss of privacy, and fear, anxiety, and worry." FAC ¶ 184 (p.64). As to increased risk of future harm, the Illinois Supreme Court's decision in *Berry* is squarely on point and controls the outcome. That leaves Plaintiffs' "loss of privacy, and fear, anxiety, and worry" as the remaining purported injury. But as the Seventh Circuit has explained:

> Illinois does not create a freestanding legal guarantee of present enjoyment of emotional well-being. Instead, it protects people from certain negligent and intentional actions that injure them. Any legal protection of emotional well-being is contingent on tort doctrines. When a tortious injury causes physical harm, compensatory damages are available for harm to emotional well-being, but when a tortious act causes no physical harm, emotional damages are available only if the act was extreme or outrageous and undertaken with the knowledge and intent that the action would likely result in severe emotional harm.

*Manley v. Law*, 889 F.3d 885, 892 (7th Cir. 2018) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50 (Ill. 2016)); *see also Cochran v. Securitas Servs. USA, Inc.*, 93 N.E.3d 493, 502–03 (Ill. 2017) (same, and explaining "bystander" exception not applicable here); *Benton v. Little League Baseball, LLC*, 181 N.E.3d 902, 932–33 (Ill. App. Ct. 2020) (rejecting attempt to recover in negligence for emotional damage absent physical injury or "bystander" status). Here, Plaintiffs allege no physical injury to anyone, no extreme or outrageous conduct by Veradigm, or any other allegation that would permit them to recover for emotional harms, standing alone.

Simply put, Plaintiffs' negligence claim fails to allege any legally recognized injury arising from such a claim and must be dismissed.

## **CONCLUSION**

For these reasons, Veradigm respectfully asks this Court to dismiss the Amended Complaint with prejudice.

Dated: November 12, 2025

Respectfully submitted,

VERADIGM LLC

By: *_/s/ Tara D. Kennedy_*
One of Its Attorneys

Matthew C. Wolfe
Tara D. Kennedy
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com

***Attorneys for Defendant Veradigm LLC***

# CERTIFICATE OF SERVICE

I, Tara D. Kennedy, an attorney, hereby certify that on **November 12, 2025**, I caused a true and correct copy of **DEFENDANT VERADIGM LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Tara D. Kennedy*