**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, JANET DOE, JENNIFER DOE, and JESSICA DOE, | ) | |
| Plaintiffs, | ) | No. 1:25-cv-10147 |
| v. | ) | Hon. Mary M. Rowland |
| VERADIGM LLC, | ) | |
| Defendant. | ) | |

**DEFENDANT VERADIGM LLC'S REPLY IN SUPPORT OF ITS MOTION**
**<u>TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>**

Matthew C. Wolfe
Tara D. Kennedy
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs Fail to Plausibly Allege Disclosure of Their PHI. ........ 1

A. Plaintiffs' Conclusory Allegations that Veradigm Disclosed PHI are Insufficient to State Any Claim as a Matter of Law. ........ 1

B. The Case Law Does Not Support a Finding that Plaintiffs' Threadbare Allegations Plausibly Allege Disclosure of PHI. ........ 3

II. Plaintiffs Fail to State a Claim Under the ECPA. ........ 7

A. Plaintiffs Fail to Allege That Veradigm Acted with a Criminal or Tortious Purpose. ........ 8

B. Plaintiffs Do Not Plausibly Allege an Independent Crime or Tort. ........ 11

C. Plaintiffs Fail to Allege Interception of Any "Contents." ........ 12

III. The California Plaintiffs Do Not Plausibly Allege a CIPA Claim. ........ 13

A. Veradigm was a Party to the Communications. ........ 13

B. No Communications Were Disclosed by Veradigm. ........ 13

C. A Personal Health Record System or Patient Portal is Not a Pen Register. ........ 14

IV. Plaintiffs' Negligence Theory Is Foreclosed By Illinois Law. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sep. 9, 2024) ....10

*Allstate Ins. Co. v. Menards, Inc.*,
285 F.3d 630 (7th Cir. 2002) ....14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....3

*Berry v. City of Chicago*,
181 N.E.3d 679 (Ill. 2020) ....14, 15

*Blair v. Nev. Landing P'ship*,
859 N.E. 2d 1188 (Ill. App. Ct. 2006) ....15

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ....15

*C. M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ....9

*Caine v. Sturdy Mem'l Hosp., Inc.*,
2026 WL 673483 (D. Mass. Mar. 10, 2026) ....10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....9, 11

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal Super. June 18, 2025) ....14

*Cochran v. Securitas Servs. USA, Inc.*,
93 N.E.3d 493 (Ill. 2017) ....15

*Doe v. Bayhealth Med. Ctr., Inc.*,
2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ....9

*Doe v. Bon Secours Mercy Health*,
2021 WL 9939010 (Ohio Com. Pl. Nov. 22, 2021) ....10

*Doe v. Boone Health, Inc.*,
2023 WL 4996117 (Mo. Cir. July 20, 2023) ....................10

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ....................10

*Doe v. Columbia Coll. Chicago*,
933 F.3d 849 (7th Cir. 2019) ....................3

*Doe v. Davita Inc.*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ....................6

*Doe v. Emerson Hosp.*,
Case No. 1:25-cv-13631-RGS, Doc. No. 20 (D. Mass. Feb. 11, 2026) ....................7

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....................8

*Doe v. Hoag Memorial Presbyterian Hosp.*,
2024 WL 1190907 (Cal. Super. Feb. 16, 2024) ....................9

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025*)*, *report and recommendation adopted in relevant part*, No. 25-cv-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025) ....................8, 9, 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................12

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ....................9

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................9

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) ....................15

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ....................5, 6

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................3, 4, 5, 7

*Hartley v. University of Chicago Medical Center*,
2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ....................4, 5, 7

*Kolegas v. Heftel Broad. Corp.*,
607 N.E.2d 201 (Ill. 1992) ........ 15

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ........ 5, 7

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........ 3, 4, 5, 7

*Kurowski v. Rush System for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ........ 4, 5, 7

*Nguyen v. Abbott Lab'ys, Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ........ 6, 7, 12, 14

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ........ 7, 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 6

*Planned Parenthood Fed'n of Am. Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 8

*Progin v. UMass Mem'l Health Care, Inc.*,
2026 WL 632770 (D. Mass. Mar. 6, 2026) ........ 10

*Roehrborn v. Lambert*,
660 N.E. 2d 180 (Ill. App. Ct. 1995) ........ 15

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 10

*Stein v. Edward-Elmhurst Health*,
2026 WL 594752 (N.D. Ill. Mar. 3, 2026), *permission to appeal granted*,
No. 26-8004 (7th Cir. Apr. 7, 2026) ........ 10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 11

*United States v. McHugh*,
2014 WL 3798834 (D. Mass. July 29, 2014) ........ 9

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 12

**Statutes**

18 U.S.C. § 2511(2)(d) ....................8

Cal. Penal Code § 631....................13, 14

Cal. Penal Code § 632....................13, 14

Cal. Penal Code § 638.51....................14

# INTRODUCTION

In their Opposition, Plaintiffs double down and consistently overstate the content of their conclusory allegations. But despite Plaintiffs' efforts to fill in the gaps, the most important part of their 97-page Second Amended Complaint ("SAC") is what it lacks—namely, any details about which aspects of Plaintiffs' information were allegedly disclosed by Veradigm to Google and how. This overarching pleading failure dooms the entirety of Plaintiffs' SAC. Plaintiffs' Opposition also fails to engage with the statutory language of the ECPA and its requirements for application of the crime-tort exception, warranting dismissal of their ECPA claim and their CIPA claim for similar reasons. Nor do Plaintiffs establish any sufficient injury to support their negligence claim. For these reasons, and those discussed in Veradigm's Motion to Dismiss (Doc. No. 44, "Mot."), Veradigm respectfully requests this Court dismiss Plaintiffs' SAC in its entirety.

# ARGUMENT

## I. Plaintiffs Fail to Plausibly Allege Disclosure of Their PHI.

### A. Plaintiffs' Conclusory Allegations that Veradigm Disclosed PHI are Insufficient to State Any Claim as a Matter of Law.

Plaintiffs insist that they have explained "what PHI Veradigm disclosed about each Plaintiff" in an itemized fashion. Opp. at 2. But even a cursory look at their purported support for that assertion demonstrates its falsity. Instead, Plaintiffs continue to rely on entirely conclusory allegations that should be disregarded. For example, Plaintiffs point to SAC paragraphs 44–65 as demonstrating that Veradigm shared their "identifiers, URLs, and page views revealing what they were doing." Opp. at 8. But those paragraphs cannot support the weight Plaintiffs place on them. For the most part they consist of generic descriptions of technology and conclusory legal conclusions, such as that analytics tools installed on FMH "divulged" "patient identifiers and communications content" to Google. SAC ¶ 49; *see also id.* ¶¶ 44–48, 56–62 (generically

discussing cookie placement and operation of analytics tools); *id.* ¶¶ 49–52, 65 (concluding without support that PHI was shared by Veradigm); *id.* ¶¶ 29–35 (consisting of legal conclusions or generic discussion about design of analytics tools and how Google might use them). Although some paragraphs list actions about which Plaintiffs allege information was disclosed (*see id.* ¶¶ 53–54, 63–64), they offer no facts explaining *what aspect* of those actions were shared and make the unsupported leap to declaring that "Veradigm disclosed a full-string, detailed URL to Google, typically containing the name of the website, folder, and sub-folders on the webserver; the name of the precise file requested; and the exact contents of the patients' communications." *Id.* ¶ 55. What this means remains a mystery, as neither the SAC nor Plaintiffs' Opposition offers a single example of any "communication," or even a specific URL, that was purportedly shared.

Plaintiffs also assert that they have "specified what information *about them* was disclosed to Google." Opp. at 8 (citing SAC ¶¶ 150, 153, 155). But each of the cited paragraphs simply offers a generic overview of how that Plaintiff used FMH. Indeed, those paragraphs say nothing at all about how Veradigm disclosed Plaintiffs' communications or PHI. *See id.* Beyond broadly listing how they used FMH, their medical conditions, and their medical providers, the sole allegations specific to Plaintiffs themselves generically allege that Veradigm shared "messages [Plaintiffs] sent to [their] doctors, details about [their] medical condition[s], [and] details about [their] treatment." SAC ¶¶ 151, 154, 156, 159 (making the same conclusory allegation for each Plaintiff). These paragraphs could apply to any defendant in any website advertising technology case. They say nothing about what information of Plaintiffs' was *actually disclosed* to Google by Veradigm.

In short, instead of offering any support for their allegations, Plaintiffs urge this Court to rule that any plaintiff can state an ECPA claim by broadly alleging that analytics tools are present in a "patient portal." But simply using the words "patient portal" is not some foolproof way for

plaintiffs to satisfy their pleading burden.[1] Portal or not, conclusory allegations are not facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of further factual enhancement" do not suffice); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (plaintiffs must provide sufficient facts to "nudge[] their claims across the line from conceivable to plausible"); *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) ("plaintiff must plead particularized factual content, not conclusory allegations"). Plaintiffs cannot baldly declare—without more—that Google Analytics technology is on FMH and so it must be tracking everything. They must plead actual facts about how, when, and where their PHI was allegedly disclosed, and what specifically was disclosed, even when making allegations about a "patient portal." *See e.g.*, *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (*Hartley I*) (dismissing ECPA claim based on allegation that "contents of the communications, *i.e.,* 'URLs, buttons, pages, and tabs they click and view'" because such allegations showed "absolute dearth of information specific to Plaintiff as what was disclosed"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (*Kurowski II*) (dismissing ECPA claim for failing to allege "any particular health or treatment information disclosure specific as to" plaintiff "whether within the portal or not").

### B. The Case Law Does Not Support a Finding that Plaintiffs' Threadbare Allegations Plausibly Allege Disclosure of PHI.

Plaintiffs declare that "[e]very court considering allegations like these has found they suffice" at the pleading stage. Opp. at 9. Not so. Notably, Plaintiffs rely on only two cases, both

[1] Plaintiffs refer to Veradigm's "patient portal" in their Opposition, but Veradigm's FMH solution is a personal health record system. Although the terms are used interchangeably by some, a patient portal is not the same as a personal health record. For purposes of this reply, Veradigm understands that Plaintiffs' allegations and arguments about "patient portals" are referring to its FMH product and responds accordingly without conceding that FMH is a patient portal or waiving its right to challenge that characterization.

of which allowed ECPA and other claims to proceed *only after* the plaintiffs satisfactorily amended their complaints, thereby demonstrating why Plaintiffs allegations here are insufficient.

First, Plaintiffs rely on *Hartley v. University of Chicago Medical Center*, 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) (*Hartley III*). They argue *Hartley III* involved "the same facts" as here but ignore that *Hartley III* ruled on a motion to dismiss the plaintiff's third amended complaint, which contained far more detail than the first complaint. Indeed, in *Hartley I* the court granted dismissal because the allegations were merely "generalizations as to what [defendant] was communicating to Facebook, *i.e.,* IP addresses, Facebook IDs, cookie identifiers, device identifiers and account numbers and the contents of the communications, *i.e.,* 'URLs, buttons, pages, and tabs they click and view.'" *Hartley I*, 2023 WL 7386060, at *2. Those generalized allegations equated to "an absolute dearth of information specific to Plaintiff." *Id.* Notably, the allegations in *Hartley I* were similar to those here, merely alleging the plaintiff was a patient and a portal user, and that she had visited defendant's "web properties to schedule appointments, view test results, access her doctor's notes, message doctors and nurses, review medications, and make payments for medical services. By doing so, Plaintiff's personally identifiable patient information and PHI was disclosed to Facebook[.]" *See Hartley v. Univ. of Chicago Med. Ctr.*, Case No. 22-cv-05891, Doc. No. 2, Compl. ¶ 21 (**Ex. A**); *cf. id.* Doc. No. 126, Third Am. Compl. ¶¶ 143–46 (**Ex. B**) (detailing specific URLs plaintiff visited as well as details of activity disclosed).

The *Kurowski* case supports the same conclusion—that Plaintiffs' allegations here are woefully lacking. Plaintiffs again rely on the most recent ruling in *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *1 (N.D. Ill. July 18, 2024) (*Kurowski IV)*, where, after multiple tries, the plaintiffs sufficiently alleged facts in support of an ECPA and other claims. In *Kurowski IV* the court noted its previous determination that "because the first two versions of Kurowski's

complaint alleged only that the tracking tools collected IP addresses, cookie identifiers, device identifiers, account numbers, URLs, and browser fingerprints, the allegations were 'far too vague to allow an inference to be drawn that Rush was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata.'" *Id.* at * 2 (quoting *Kurowski II*, 683 F. Supp. 3d at 843); *see also Kurowski I*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (dismissing ECPA claim where plaintiff failed to "allege what surreptitious patient data disclosures" actually occurred through use of patient portal).

*Hartley* and *Kurowski* demonstrate what Plaintiffs' allegations lack—specificity about their information that was allegedly shared (such as through a URL) and what it allegedly revealed about Plaintiffs' PHI. As explained above, the fact that this matter involves a personal health record system does not overcome any and all pleading deficiencies. Indeed, in *Hartley III* the court explained the "act of logging into a healthcare provider's patient portal" can reveal patient status, but that ruling was focused on the specific allegations there, which made clear that the information allegedly shared revealed sensitive health information because, on the facts alleged, it showed patient status with a specific medical provider. *See Hartley III*, 2025 WL 2802317, at *3, *5; **Ex. B** ¶¶ 143–46. Here, however, Plaintiffs do not allege enough for the Court to assess whether any PHI was shared, for example they do not even allege enough to ascertain whether the identity of a medical provider was revealed or simply the fact that Plaintiffs logged into FMH, never mind whether any specific activity involving that provider was disclosed. Without such basic information, there is no plausible inference that Plaintiffs' PHI was disclosed.

Next, Plaintiffs attempt to write off Veradigm's case law as not involving portal allegations. That's wrong. Many of the cases cited in Veradigm's motion involved allegations that the plaintiffs accessed patient portals, those allegations were just not plausibly supported. *Hannant*

is instructive. There, the court noted that plaintiff alleged "[d]efendant disclosed information like her 'status as a patient' and her 'patient portal activity' but provide[d] no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal." *Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025). Without such details, the allegations were insufficient regardless of mentioning a portal, because "an allegation that patient status was disclosed, standing alone, is closer to a legal conclusion than a factual allegation." *Id.*; *see also Doe v. Davita Inc.*, 2024 WL 1772854, at *1 (S.D. Cal. Apr. 24, 2024) (noting plaintiff's allegations broadly referred to use of defendant's "website, app, and/or any corresponding patient portals" collectively the "Online Platforms"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024) (noting plaintiff alleged use of patient portal, but failed to plausibly do so because she made "no allegations as to the type of information she provided to Defendant through MyChart or that Defendant transmitted Private Information *of hers* to third parties through the Private Patient Portal").

Additionally, although it does not involve a "patient portal," the *Abbott Laboratories* case likewise demonstrates the insufficiency of Plaintiffs' allegations. *See* Mot. at 6, citing *Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753, at *5 (N.D. Ill. Aug. 8, 2025) (dismissing first complaint). A judge in this district recently dismissed the amended complaint in that matter with prejudice. *See Nguyen v. Abbott Lab'ys, Inc.*, 2026 WL 579206, at *7 (N.D. Ill. Mar. 2, 2026) (*Abbott II*). There, plaintiffs generically alleged that all information they inputted into Abbott's website (for diabetes monitoring trials) was disclosed to Meta or Google. *See id.* at *2.[2] The court determined plaintiffs' broad assertions were nothing but "legal conclusions" and looked to screenshots

[2] For example, plaintiffs "generally allege[]d" that Abbott disclosed their "(1) status as medical customers, (2) specific health conditions, i.e., diabetes, and (3) the specific diabetes management device used or sought" such as through sharing search terms entered on its website. *Abbott II*, 2026 WL 579206, at *2.

showing how the tools actually worked to assess whether they plausibly alleged disclosure of PHI. *Id.* at *4–5. The screenshots demonstrated that "not everything" a user disclosed or communicated to Abbott's website was transmitted to third parties. *Id.* at *4. Instead, limited information was disclosed, such as a click on the "'Get your free* sensor' button" being transmitted as an event described as "SubscribedButtonClick." *Id.* The court therefore granted dismissal because "[t]he fact that a form was completed, a button to subscribe was clicked, or a user was female is distinguishable from the kind of [PII] Abbott would need to disclose to be liable under the ECPA." *Id.* Here, Plaintiffs' allegations track those the court found too generic and conclusory to support a claim in *Abbott II*, further supporting dismissal.

In sum, Plaintiffs' allegations are closer to *Kurowski I & II* and *Hartley I* than *Kurowski IV* or *Hartley III*, and Plaintiffs must include more factual detail to plausibly allege that their PHI was disclosed. *See also, e.g.*, *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (dismissing ECPA claim where complaint failed to plead any facts in support of conclusory statements that defendant "intended to violate" HIPAA and "disclosed" PHI); *Abbott II*, 2026 WL 579206, at *4–5; *Doe v. Emerson Hosp.*, Case No. 1:25-cv-13631-RGS, Doc. No. 20 (D. Mass. Feb. 11, 2026) (**Ex. C**) (plaintiffs' allegations insufficient because they failed to "identify any *concrete* examples" of how they used defendant's website or portal and therefore failed to provide "adequate notice of the PHI [defendant] allegedly disclosed to third-party advertisers"). Accordingly, the court should dismiss the SAC in its entirety.

## II. Plaintiffs Fail to State a Claim Under the ECPA.

Plaintiffs appear to now concede that Veradigm was a party to the alleged communications. *See* Opp. at 10–11 (noting "one-party consent" rule without challenging its application here); Mot. at 8–9. As a party, Veradigm could not "intercept" its own communication in violation of the ECPA's one-party consent rule. *See* Mot. at 7–9. Trying to get around this fact, Plaintiffs argue

that they have sufficiently pled the crime-tort exception to the one-party consent rule. *See* 18 U.S.C. § 2511(2)(d) (consent rule does not apply "if the recording party intercepted the communication 'for the purpose of committing any criminal or tortious act'"). They have failed to do so, and fail to allege interception of contents, so their ECPA claim should be dismissed.

### A. Plaintiffs Fail to Allege That Veradigm Acted with a Criminal or Tortious Purpose.

Plaintiffs almost entirely fail to grapple with Veradigm's arguments regarding the crime-tort exception. Rather than address the statutory language head on, or well-reasoned precedent from other jurisdictions, Plaintiffs baldly assert that Veradigm disclosed their PHI with an "improper purpose" and that the "'purpose' element is met whenever defendant commits a wrongful act in addition to the wiretap violation." Opp. at 10. Both assertions ignore the ECPA's language, which in order to invoke the crime-tort exception requires Plaintiffs to plausibly allege Veradigm (1) acted ***with the purpose to commit*** (2) an independent crime or tort, separate from the interception itself. *See* 18 U.S.C. § 2511(2)(d); *Planned Parenthood Fed'n of Am. Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022).

Plaintiffs' Opposition improperly equates purpose with effect. "[I]t is not enough that the alleged disclosure may constitute, or result in, a tortious act in violation of federal law. Instead, the [ECPA's] language is clear that the interception must be '*for the purpose of committing*'" a tortious act. *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025). As Veradigm demonstrated in its Motion to Dismiss, Plaintiffs' conclusory allegations fall well short of demonstrating that Veradigm's use of commonplace analytics tools was for the purpose of harming Plaintiffs and others through criminal or tortious actions. Mot. at 10–13. *See Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *11 (D. Mass. Aug. 29, 2025) ("Indeed, the heightened intent required by the words 'for the purpose' of committing a crime or tort elevates

this intent requirement beyond the already-heightened requirement that the interception itself be 'intentional.'"), *report and recommendation adopted in relevant part*, No. 25-cv-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025). Plaintiffs make no effort to explain how their allegations plausibly support that Veradigm's *purpose* in using Google's technology was to act criminally or negligently. *See Nichols*, 2026 WL 607763, at *4 (conclusory allegations that defendant "intended to violate" HIPAA and "disclosed HIPAA-protected health information to unauthorized third parties" insufficient to invoke crime-tort exception).

Plaintiffs' argument in Opposition—that courts have found the "purpose" element met "whenever defendant commits a wrongful act in addition to the wiretap violation" (Opp. at 11)—is wrong and ignores the statutory text. Indeed, to hold that simply committing any other wrongful act in addition to a wiretap violation satisfies the purpose element would read "purpose" out of the statute and render its use "meaningless." *United States v. McHugh*, 2014 WL 3798834, at *5 (D. Mass. July 29, 2014); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (explaining why Congress chose not to define "tortious intent" by the "act of recording itself"). To satisfy the purpose requirement, Plaintiffs must plausibly allege that Veradigm "consciously desire[d]" to violate HIPAA and state law by sharing PHI with Google. *Lawrence Gen. Hos.*, 2025 WL 2808055, at *10; *see also Caro*, 618 F.3d at 100 (requiring a deliberate desire to harm).

Plaintiffs rely on a number of district court rulings to support their ECPA claim.[3] This Court is not bound by those rulings, several of which ignore the statutory text and requirement to

[3] Notably, several of the cases Plaintiffs cite did not involve ECPA claims at all. Accordingly, their assertion that those cases include holdings about when "purpose" is shown under the crime-tort exception is false. *See* Opp. at 11 n.2; *C. M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *1 (N.D. Cal. Jan. 19, 2024) (no ECPA claim); *Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *4–5 (M.D. Pa. Feb. 14, 2025) (claim under Pennsylvania's Wiretapping and Electronic Surveillance Control Act, not ECPA); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024) (declining to rule on applicability of Massachusetts Wiretap Act; no ECPA claim); *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403, at *5 (Del. Super. Ct. Apr. 4, 2025) (no ECPA claim); *Doe v. Hoag Memorial Presbyterian Hosp.*, 2024 WL

construe the crime-tort exception narrowly.[4] Notably, a case from this District was recently accepted for interlocutory appeal by the Seventh Circuit on this question: "Whether the crime-tort exception to the one-party consent rule in the Electronic Communications Privacy Act applies when a complaint alleges that the defendant acted with a lawful purpose, and does not allege that a defendant acted with a criminal or tortious purpose?" *Stein v. Edward-Elmhurst Health*, 2026 WL 594752, at *5 (N.D. Ill. Mar. 3, 2026), *permission to appeal granted*, No. 26-8004 (7th Cir. Apr. 7, 2026). Veradigm respectfully asserts that this Court should look to other decisions by courts across the country that have rejected the application of the crime-tort exception in circumstances similar to those present here. *See* Mot. at 10–13 (discussing case law from other districts); *see also Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483, at *4 (D. Mass. Mar. 10, 2026) (decision issued after Veradigm's Motion dismissing ECPA claim for failure to allege applicability of crime-tort exception); *Progin v. UMass Mem'l Health Care, Inc.*, 2026 WL 632770, at *4–5 (D. Mass. Mar. 6, 2026) (same). Veradigm submits those cases are better reasoned and avoid an interpretation of the crime-tort exception that would effectively swallow the statute and find hundreds of businesses criminally liable for using standard website analytics tools that serve a permissible commercial (and non-criminal or tortious) function.

---

1190907, at *3 (Cal. Super. Feb. 16, 2024) (addressing CIPA but not ECPA claim)*; Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, at *3-4 (Mass. Super. Sep. 14, 2023) (claim under Massachusetts Wiretap Act, not ECPA); *Doe v. Boone Health, Inc.*, 2023 WL 4996117, at *2 (Mo. Cir. July 20, 2023) (claim under Missouri Computer Tampering Act, not ECPA); *Doe v. Bon Secours Mercy Health*, 2021 WL 9939010, at *2 (Ohio Com. Pl. Nov. 22, 2021) (claim for common law tort under Ohio law "for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship"; no ECPA claim).

[4] *See e.g.*, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sep. 9, 2024) (failing to draw distinction between alleged interception and contemporaneous sharing of information, despite acknowledging defendant's conduct was in furtherance of commercial (rather than criminal) conduct); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *4–5 (N.D. Ill. Feb. 21, 2025) (acknowledging conduct supporting crime-tort exception must be independent from the interception itself, but nonetheless finding contemporaneous disclosure of information incidental to interception sufficient to invoke the exception).

Plaintiffs also intentionally misconstrue Veradigm's argument regarding financial motives for use of the Google technology. Veradigm does not argue that it was "only trying to make money." Opp. at 12. Instead, as Plaintiffs' own allegations demonstrate, Veradigm used analytics tools for the valid purpose of optimizing its website, apps, marketing, and product designs, to "bolster" advertising strategies, or for marketing purposes. *See, e.g.*, SAC ¶¶ 42, 108, 162, 172, 217, 267, 275. Plaintiffs' hypothetical of intercepting communications to blackmail someone is a red herring that mischaracterizes applicable case law and Veradigm's argument, which is that business or financial motives, in the absence of any criminal or tortious purpose, do not trigger the crime-tort exception. Notably, in Plaintiffs' blackmail hypothetical, blackmail is criminal or tortious, so making a recording *with the purpose* of later blackmailing someone clearly falls within the crime-tort exception. *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) ("[w]here the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."). Here, "[t]here is nothing in the [SAC] to suggest that [Veradigm] had a conscious purpose in deploying the web tracking tools to disclose information in violation of HIPAA," making the crime-tort exception inapplicable. *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *7.

### B. Plaintiffs Do Not Plausibly Allege an Independent Crime or Tort.

Plaintiffs must also allege that Veradigm intended to commit a criminal or tortious act that that is *independent* from the interception itself to successfully invoke the crime-tort exception. *Caro*, 318 F.3d at 99–100. Plaintiffs make no effort to address this point, and dismissal should be granted on that basis alone. Nevertheless, put simply, the interception cannot be both the ECPA violation and the act underlying the additional alleged crime or tort. Here, Plaintiffs allege "simultaneous" collection and disclosure (SAC ¶¶ 4, 147) and it is clear that the same act forms

the basis of both their wiretap and HIPAA violation or negligence theories. *See* Mot. at 13–14. Accordingly, Plaintiffs fail to plead a crime or tort independent of the interception itself, further requiring dismissal of their ECPA claim.

**C. Plaintiffs Fail to Allege Interception of Any "Contents."**

Nor can Plaintiffs establish that Veradigm intercepted the *contents* of any alleged communications. Plaintiffs argue that "Google's trackers were designed to collect 'contents'" and that "Google could not know what Plaintiffs were doing within Veradigm's patient portals without receiving their URLs and Page Titles—data that disclosed what Plaintiffs were viewing, searching for, and finding. And that data has been held to be 'contents' in like cases." Opp. at 13. But this argument is a house of cards. As set forth above, Plaintiffs have not sufficiently alleged that Google knew what they were doing in Veradigm's patient portals, nor that URLs and page titles containing details that would rise to the level of "contents" were ever shared. *See supra* § I.

Plaintiff cites to several cases for the proposition that "descriptive URLs" may constitute actionable contents (Opp. at 13), but the cases cited by Plaintiffs each involve complaints with sufficiently detailed allegations describing the information disclosed, such as URLs showing precise search terms or exact interactions the plaintiffs had with the websites. *See e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076–77 (N.D. Cal. 2023) (providing example of URL: "hardfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis URL"); *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *5 (N.D. Cal. Dec. 30, 2024) (URLs were content because they divulged "exact video users watched" and went "beyond revealing a general webpage address with basic identification information that would render it record information" by revealing path and query string information); *cf. Abbott II*, 2026 WL 579206, at *6 (allegation that defendant allowed "unauthorized third parties to intercept the contents of customer communications," was "ultimately a legal conclusion" in context of finding

no content under CIPA). Again, Plaintiffs have not sufficiently supported their conclusory assertion that detailed URLs showing search queries were disclosed here, nor alleged any specific actions they took within FMH. Even if such information has been held to be contents in other cases, Plaintiffs wholly fail to allege that any such information is involved here.

## III. The California Plaintiffs Do Not Plausibly Allege a CIPA Claim.

As with all Plaintiffs' ECPA claim, the California Plaintiffs exaggerate their allegations to try to put together a plausible CIPA claim. Like the ECPA claim, it fails.

### A. Veradigm was a Party to the Communications.

First, Plaintiffs concede that Veradigm was a party to any communications. As Plaintiffs themselves put it: "Plaintiffs each logged in to Veradigm's portal." Opp. at 15. Because Veradigm was a party, "plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (emphasis in original). For the reasons explained above in Section II.B as to Plaintiffs' ECPA claim, they do not do so. That ends the matter as to Plaintiffs' claims under CIPA sections 631 and 632.

### B. No Communications Were Disclosed by Veradigm.

Second, and in the alternative, Plaintiffs do not sufficiently allege the disclosure of the "contents" of any "communications," which the parties agree is required for CIPA sections 631 and 632 to apply. Plaintiffs argue only that "Veradigm disclosed each action Plaintiffs took within the portal." Opp. at 15. But the fact of an appointment being made, or a user moving between different parts of FMH, is not a "communication." Although Plaintiffs' copy-and-pasted complaint claims broadly that substantive information was shared, Plaintiffs never identify a single URL they allegedly visit or the substance of any communications that were supposedly transmitted to

Google. *See Abbott II*, 2026 WL 579206, at *6 (dismissing CIPA claim in relevant part because transmission of fact "that a form was completed [or] button to subscribe was clicked" was not content of communication). Veradigm made these points in its Motion (Mot. at 14), and Plaintiffs did not address them—because they can't. This deficiency is fatal to Plaintiffs' Section 631 and 632 claims as well.

### C. A Personal Health Record System or Patient Portal is Not a Pen Register.

Finally, Plaintiffs misuse CIPA section 638.51 to claim that Veradigm's FMH product, which Plaintiffs voluntarily signed up for and used, is an unlawful "pen register" or "trap and trace device." This is perhaps the most outlandish of all of Plaintiffs' theories. Notably, in pursuing the pen-register theory, Plaintiffs argue that FMH tracks "information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication.*" Opp. at 18 (citing CIPA § 638.51, emphasis added). So, does Veradigm transmit the contents of a communication to Google, or don't they? Plaintiffs cannot make up their mind.

The answer is simple: Veradigm does not disclose patient communications, for the reasons explained earlier. But that does not make FMH into a pen register. Every website or mobile app must identify an IP address in order to communicate with the end user. That's how the internet works, and CIPA expressly exempts processes used for communications service. *See Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal Super. June 18, 2025) (dismissing pen register claim). Plaintiffs' pen-register claim must be dismissed as well.

## IV. Plaintiffs' Negligence Theory Is Foreclosed By Illinois Law.

To decide the viability of Plaintiffs' negligence claim, this Court "must make a predictive judgment as to how the supreme court of [Illinois] would decide the matter if it were presented presently to that tribunal." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). The closest Illinois Supreme Court case on point is that Court's 2020 decision in *Berry v. City of*

*Chicago*, where the Illinois Supreme Court held that "a showing of actual or realized harm" is required "before permitting recovery in tort." 181 N.E.3d 679, 688 (Ill. 2020).

Plaintiffs acknowledge *Berry* requires actual harm, but say they met that standard by alleging "loss of privacy, and fear, anxiety, and worry about their loss of control." Opp. at 19–20. That's wrong. Neither theory is allowed as a standalone basis for a tort claim in Illinois.

As to loss of privacy, there are "four ways to state a cause of action for invasion of privacy in Illinois: (1) intrusion upon the seclusion of another, (2) appropriation of another's name or likeness, (3) public disclosure of private facts, and (4) publicity placing another in a false light." *Flores v. Aon Corp.*, 242 N.E.3d 340, 359–60 (Ill. App. Ct. 2023). Each of these torts is an intentional tort,[5] so Plaintiffs' negligence theory cannot support any of them.

Regarding fear, anxiety, and worry, Plaintiffs' theory also is foreclosed by Illinois law, because they do not allege physical injury. A "freestanding emotional distress claim" sounding in negligence may only be pursued when it is the natural and foreseeable consequence of a physical injury. *Cochran v. Securitas Servs. USA, Inc.*, 93 N.E.3d 493, 501–02 (Ill. 2017). Here, no physical injury is alleged, and so no negligence claim for emotional distress is available.

## CONCLUSION

For these reasons, Veradigm respectfully asks this Court to dismiss Plaintiffs' Second Amended Complaint with prejudice.

---

[5] *See Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004) (intrusion upon seclusion); *Blair v. Nev. Landing P'ship*, 859 N.E. 2d 1188, 1193 (Ill. App. Ct. 2006) (appropriation of likeness); *Roehrborn v. Lambert*, 660 N.E. 2d 180, 184 (Ill. App. Ct. 1995) (public disclosure of private facts); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209 (Ill. 1992) (false light).

Dated: April 13, 2026

Respectfully submitted,

VERADIGM LLC

By: */s/ Tara D. Kennedy*
One of Its Attorneys

Matthew C. Wolfe
Tara D. Kennedy
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com

***Attorneys for Defendant Veradigm LLC***

## CERTIFICATE OF SERVICE

I, Tara D. Kennedy, an attorney, hereby certify that on **April 13, 2026**, I caused a true and correct copy of **DEFENDANT VERADIGM LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Tara D. Kennedy*