**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, JANET DOE, JENNIFER DOE, and JESSICA DOE, | |
| Plaintiffs, | Case No. 25-cv-10147 |
| v. | Judge Mary M. Rowland |
| VERADIGM, LLC d/b/a ALLSCRIPTS, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jane Doe, Janet Doe, Jennifer Doe, and Jessica Doe bring this putative class action against Defendant Veradigm, LLC ("Veradigm"), alleging that Veradigm improperly divulged Plaintiffs' protected health information ("PHI") in violation of state and federal law. Before the Court now is Veradigm's motion to dismiss the second amended complaint. For the reasons stated herein, Veradigm's motion to dismiss [44] is denied.

## I.  Background

The following factual allegations taken from the operative complaint [51] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Veradigm is one of the largest providers of health information technology services in the United States. [51] ¶ 2. Veradigm hosts online patient portals which allow patients to manage their healthcare online by, among other things, viewing their medical records, scheduling appointments, and messaging health care providers. [51]

1

¶ 2Plaintiffs allege that Veradigm operates as a "business associate" under Health Insurance Portability and Accountability Act ("HIPAA"), which requires that Veradigm maintain the confidentiality of PHI in accordance with state and federal law. [51] ¶ 3.

Veradigm used various Google digital marketing tools (the "Tracking Tools") on its patient portals. [51] ¶ 4. Google warns entities who provide password protected patient portals not to use its "Google Analytics" tool on "authenticated pages," meaning pages that require patients to login with a username and password. [51] ¶ 7. Specifically, Google warns not to use Google Analytics on such pages because they "are likely to be HIPAA-covered." *Id*.

Veradigm nonetheless implemented the Tracking Tools, including Google Analytics, on its patient portals. [51] ¶¶ 32, 40. Those Tracking Tools are invisible to patients accessing Veradigm's patient portals. [51] ¶ 33. By using data collected by those tools, Google is able to connect a website user's data to their real-world identity. [51] ¶ 35. Once that is done, Google processes, analyzes, and assimilates that data so it can be sold to online advertisers. [51] ¶ 35.

When a patient signs into a Veradigm patient portal, the Tracking Tools deposit "first-party" cookies on the patient's computing device. [51] ¶ 46. These cookies are disguised as belonging to Veradigm, but they are in fact Google cookies. [51] ¶ 46. But by disguising the Cookies as belonging to Veradigm, Veradigm prevents patients from blocking efforts to track information transmitted through the patient portal. [51] ¶¶ 46-48. As a result, once a patient logs in through a Veradigm patient portal, various

identifying information is transmitted to Google, and patients have no way to stop it. [51] ¶ 49. The information transmitted includes patient IP addresses, device identifiers, account numbers, URLs, searches for information regarding specific conditions, as well as actions to log in to patient portals and actions taken once a patient is inside of a patient portal. [51] ¶¶ 53-54.

Each Plaintiff used Veradigm patient portals. Within those portals, Plaintiffs allege that Veradigm intercepted and then disclosed to Google information regarding their patient status, messages they sent to their doctors, details regarding their conditions and treatment, and the dates and times on which they logged into their patient portals. [51] ¶¶ 151, 154, 156, 158.

Plaintiffs bring three claims on behalf of a putative nationwide class and California subclass. Count I is a claim for a violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1) *et seq.* [51] at 74. Count II is a claim for the Illinois common law tort of negligence. [51] at 84. Count III is a claim for a violation of the California Invasion of Privacy Act ("CIPA"). [51] at 88. Counts I and II are brought on behalf of the nationwide class; Count III is brought only on behalf of the putative California subclass. [51] ¶¶ 251, 285, 307.

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank*

3

*Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

III.  **Analysis**

    **A. Plaintiffs Plausibly Alleged That Veradigm Disclosed PHI**

4

Initially, Veradigm argues that all of Plaintiffs' claims fail because they only conclusively allege that their PHI was disclosed to Google. [44] at 4. A spate of recent cases sets out the contours of what Plaintiffs must allege to survive dismissal.

In *Hannant v. Culbertson*, the court dismissed a plaintiff's complaint where the plaintiff alleged that Culbertson "disclosed information like [the plaintiff's status] as a patient and her patient portal activity, but provide[d] no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal." *Hannant v. Culbertson*, No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *3 (C.D. Ill. Aug. 20, 2025).

In *Kurowski v. Rush Sys. for Health*, Kurowski similarly alleged that the Rush disclosed PII from within a private patient portal. 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("*Kurowksi II*"). Kurowski claimed that Rush disclosed "patient IP addresses, patient cookie identifiers, device identifiers, account numbers, URLs, other unique identifying numbers, characteristics, or codes, and browser-fingerprints" *Id.* at 841. The court dismissed the complaint, explaining that absent any information about what activity within the patient portal was disclosed, the "allegations are far too vague to allow an inference to be drawn that Rush was actually disclosing [PII]." *Id.* at 843. Kurowski subsequently amended the complaint to add allegations that Rush transmitted the name of Kurowski's personal physician and the physician's specialty, and that after the disclosure, Kurowski began receiving ads related to her specific health condition. *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*"). The court held that this was sufficient

5

to survive a motion to dismiss. *See also Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2024 WL 1886909, at \*2 (N.D. Ill. Apr. 30, 2024) ("*Hartley II*") (allowing amended complaint to survive dismissal where plaintiff alleged she sought to obtain a certain medication within a patient portal and then received advertisements about that medication); *Doe v. Regents of University of California*, 672 F.Supp.3d 813, 816 (N.D. Cal. May 8, 2023) (allowing claim to survive where patient alleged that she entered data relating to her heart issues and high blood pressure in [a patient portal] and later received advertisements on Facebook, including at least one advertisement relating to high blood pressure medication.").

Plaintiffs' allegations here are closer to *Kurowski III*, *Hartley II*, and *Regents* than *Hannant* or *Kurowski II*. Each plaintiff alleges the specific activities they undertook related to their medical conditions, and they further allege that they subsequently received advertisements related to those conditions. [52] ¶¶ 150-60.

At the pleadings stage, Plaintiffs are required only to "provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *City of Waukegan, Ill. v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1003 (N.D. Ill. 2008) (citation omitted). Plaintiffs' allegations regarding the disclosure of their PII are sufficient to provide Veradigm with fair notice of their claim and the grounds upon which those claims rest.

### B. Plaintiffs have stated a claim under the ECPA

The ECPA "makes it unlawful to 'intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any

wire, oral, or electronic communication," or to "intentionally disclose[] . . . the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained [unlawfully]." 18 U.S.C § 2511(a), (c)-(d). The statute exempts from liability one who "is a party to the communication." 18 U.S.C. § 2511(d). Plaintiffs do not dispute that Veradigm was a party to any intercepted communications. But as an exception to the exception (commonly referred to as the "crime-tort exception"), a party to a communication is nonetheless liable where they intercept the communication "for the purpose of committing any criminal or tortious act." *Id*.

Veradigm argues that it is not liable because (1) it was a party to any relevant communications and the crime-tort exception precludes liability, and (2) Plaintiffs fail to allege that any "contents" were disclosed.

### i. Veradigm cannot escape liability under the crime-tort exception

As just explained, under the crime-tort exception, a party cannot be liable for intercepting their own communication unless they did so for the purpose of committing any criminal or tortious act. Neither side disputes that Veradigm was a party to the allegedly intercepted communications, but they disagree about how to interpret the "purpose" requirement.

Veradigm argues that they intercepted communications only for marketing purposes, *see, e.g.*, SAC ¶¶ 42, 108, 162, and marketing is neither criminal nor tortious. As such, Veradigm contends, the crime-tort exception to the exception does not apply, and Veradigm is not liable under the ECPA. [44] at 12 (citing *Doe 1 v.*

*Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at \*12 (C.D. Ill. June 6, 2025) (finding crime-tort exception did not apply in part because plaintiff alleged that the defendant shared information with third parties "for the purpose of creating targeted online advertisements" rather than tortious or criminal conduct)).

Plaintiffs respond that Veradigm's argument misreads the statute. The question, Plaintiffs say, is not whether a defendant intercepts a communication for a criminal or tortious purpose, but rather whether the defendant intercepts a communication for the purposes of committing a criminal or tortious act. Plaintiffs contend that Veradigm's *act* was to intercept and then disclose communications containing their PII, and that Veradigm did so for the *purpose* of obtaining marketing benefits. HIPAA imposes a criminal penalty for knowingly "disclosing individually identifiable health information to another person." 42 U.S.C. § 1320d-6(a)(3). Under Plaintiffs' reading, Veradigm's *act* criminally violated HIPAA; whether Veradigm acted with a criminal or tortious *purpose* is irrelevant.

The parties' dispute over the meaning of "purpose" in 18 U.S.C. § 2511(d) has been litigated before dozens of district courts around the country. *See Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at \*4 (N.D. Ill. Feb. 21, 2025), *motion to certify appeal granted*, No. 23-CV-14515, 2026 WL 594752 (N.D. Ill. Mar. 3, 2026) (collecting cases). By the Court's count, the majority of courts faced with this issue (including all of the courts in this district) have adopted Plaintiffs' reading of the statute. This Court joins in that view.

8

The relevant text concerns whether one intercepts a communication with the "purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). As the *Stein* court pointed out it is helpful to "[s]eparat[e] the adjectives from the noun." 2025 WL 580556, at \*6. The words "criminal or tortious" modify the word "act," rather than the word "purpose." To read the statute to require a criminal or tortious *purpose* would "import a *mens rea* element into the statute," and there is no indication that Congress meant to do so. *Id*.

Here, Plaintiffs allege that Veradigm acted to unlawfully disclose their PII in violation of HIPAA. The crime-tort exception thus applies. That Veradigm's purpose in doing so was for marketing purposes rather than to commit any crime or tort is irrelevant.

### ii. Plaintiffs adequately allege that Veradigm intercepted "contents."

Veradigm next argues that Plaintiffs' ECPA claim fails because they do not plausibly allege that any "contents" were intercepted by another party. [44] at 14. For purposes of an ECPA claim, "contents" refers to "*any* information concerning the substance, purport, or meaning" of the communication. 18 U.S.C. § 2510(8) (emphasis added). Here, Plaintiffs allege that their "electronic communications" were intercepted. *See* [51] ¶ 254. An "electronic communication" is defined as "*any* transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce [subject to certain exceptions not relevant here]." 18 U.S.C. § 2510(12) (emphasis added). Taken

together, the ECPA thus defines "contents" to mean *any* information concerning the substance of *any* transfer of signs, signals, or data, among other things.

Veradigm points to *In re Zynga Privacy Litigation*, where the Ninth Circuit construed "contents" to mean "the intended message conveyed by the communication[,]" but held that it did not include "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Even under this more narrow construction, courts have held that URLs that describe patient activity within a patient portal constitute contents. *E.g.*, *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *4 (holding "log-in buttons" and "descriptive URLs" were "contents"). Veradigm argues that Plaintiffs nonetheless fall short because their complaint does not identify the specific URLs that were intercepted and disclosed. But it is not clear how Plaintiffs *could* allege that information prior to discovery. "The boundaries of what transferred information is content under the Act is better determined on a full evidentiary record." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023). At this early stage, Plaintiffs have adequately alleged that contents were intercepted and disclosed. Plaintiffs' ECPA claim thus survives dismissal.

### C. Plaintiffs have stated a claim under CIPA

The Court turns next to Plaintiffs' CIPA claim.[1] CIPA is a criminal statute, but it authorizes victims to bring civil actions against those who violate the statute. *See*

---

[1] As Veradigm points out, courts have described CIPA as "a total mess." [44] at 15 (quoting *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025)); see also *de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *8 (N.D. Cal. Dec. 22, 2025) ("CIPA's language is opaque."). The Court does not disagree, but it is not the Court's role to second-guess the

Cal. Penal Code § 637.2(a). The statute was enacted in 1967 to address "the increasing use of wiretapping to eavesdrop on private phone conversations." *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *3 (N.D. Cal. Oct. 17, 2025). "In recent years, the statute has frequently been invoked—with mixed success—to challenge the use of third-party software that records website activity without visitors' knowledge." *Id*. (collecting cases).

Plaintiffs allege that Veradigm violated Sections 631(a), 632(a), and 638.51 of CIPA. The Court addresses each.

### i.  Section 631(a)

California courts interpret Section 631(a) as containing three different clauses which cover "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 583 P.2d 737 (Cal. 1978). These three patterns of conduct include (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 975 (C.D. Cal. 2023) (internal citations and quotations omitted); Cal. Penal Code § 631(a). "In addition to these three clauses, Section 631 contains an aiding provision which imposes liability on anyone who aids, agrees with, employs, or conspires with any person or persons in violating the three clauses described above." *Valenzuela*, 686 F. Supp. 3d at 975 (C.D. Cal. 2023) (internal citations and quotations omitted).

---

decision-making of the California state legislature. *S. Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646, 652 (7th Cir. 2022).

Plaintiffs' claim is premised on the aiding provision. [51] ¶¶ 315-17. The question, then, is whether they have plausibly alleged that Veradigm *either* (1) "intentionally wiretap[ped]" their communications" *or* (2) "attempt[ed] to learn the contents or meaning of a communication in transit over a wire," or (3) did a combination of both. *Valenzuela*, 686 F. Supp. 3d at 975 (C.D. Cal. 2023).

"[C]ourts have consistently held that [the intentional wiretapping provision] applies only to telegraph and telephone wires, lines, cables, or instruments, and not to internet connections." *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *6 (S.D. Cal. Oct. 24, 2023) (collecting cases) (cleaned up).

That leaves Section 631's second provision. Veradigm argues that Plaintiffs fail to allege an attempt to learn about communications *while those communications were in transit*, as the statute requires. [44] at 16.[2] Courts considering this issue on a motion to dismiss regularly hold that "whether communications are 'read' in transit or only after storage is a fact-intensive question" that is "better left for summary judgment." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1092, 1092 (N.D. Cal. 2025); *see also Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) (holding that whether "that information was intercepted . . . before it was stored . . . , or vice versa, is a question for summary judgment").

---

[2] As with Plaintiffs' ECPA claim, Veradigm also argues that the communications were not "content" as contemplated by CIPA. [44] at 16. The term carries the same meaning under both statutes. *Eating Recovery*, 2025 WL 2971090, at *4. The Court rejects this argument for reasons described *supra*.

12

Here, Plaintiffs allege that their communications were disclosed to Google "simultaneously" with their interactions in Veradigm's patient portal. [51] ¶ 147. Allegations of simultaneous interceptions are sufficient to satisfy Section 631(a). *See M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (allegations of "real-time interception of users' information" sufficient to state a claim). Accordingly, Plaintiffs' allegations are sufficient to state a claim under Section 631(a).

### ii. Section 632(a)

To state a Section 632(a) claim, Plaintiffs must allege "(1) an electronic recording of or eavesdropping on (2) a confidential communication." *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sep. 26, 2013).

Veradigm argues that Plaintiffs' allegations are too conclusory to state a claim. [44] at 17. Veradigm relies on *Rodriguez v. ByteDance, Inc.*, where the district court dismissed a plaintiff's Section 632(a) claim because the complaint failed to allege "how the interception occurred, whose communications were intercepted, or what was contained in those communications." No. 23 CV 4953, 2025 WL 2495865, at *6 (N.D. Ill. Aug. 29, 2025). Plaintiffs' complaint contains each of these missing elements: the interception allegedly occurred (1) when the Tracking Tools deploy Google's cookies on (2) patients' browsers and then direct (3) patients' communications about their treatment to Google. *E.g.* [51] ¶ 52. Whether this *in fact* occurred, and the degree to which Plaintiffs accurately describe the function of the Tracking Tools, are questions to be answered on a full evidentiary record rather than on a motion to dismiss.

13

Veradigm also contends that the communications are not "confidential" as contemplated by the statute. A communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded . . . The standard of confidentiality is an objective one defined in terms of reasonableness." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "To prevail against a 12(b)(6) motion, then, [Plaintiffs] would have to allege facts that would lead to the plausible inference that his was a confidential communication—that is, a communication that he had an objectively reasonable expectation was not being recorded." *Id*. at 1020. Plaintiffs allege that the recorded communications were made in an otherwise-secure patient portal that required a username and password to log into. [51] ¶ 9. These allegations are sufficient to support a plausible inference that Plaintiffs expected their communications were not being recorded. Accordingly, Plaintiffs' Section 632(a) claim survives.

### iii. Section 638.51

Section 638.51 makes it unlawful to "install or use a pen register or trap and trace device." Cal. Penal Code § 638.51(a). For purposes of the statute, a "pen register" is a device that "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace device" is one that "captures the incoming electronic or other impulses that identify the originating number or other dialing,

14

routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

Veradigm argues that because IP addresses are collected any time a user accesses a website, their disclosure cannot give rise to a claim under Section 538.51. [44] at 17-18 (citing *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. June 18, 2025) (denying Section 638.51 claim where plaintiff alleged only that his IP address was captured). But Plaintiffs here allege many more types of data were collected than just IP addresses. And "[t]he overwhelming majority of courts that have considered this question have . . . concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA." *Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (collecting cases). This Court now follows suit. Plaintiffs CIPA claim thus survives dismissal.

### D. Plaintiffs have stated a claim for negligence under Illinois law.[3]

To plead a negligence claim, Plaintiffs must state facts sufficient to allege that: (1) Veradigm owed a duty to them, (2) it breached that duty, and (3) the breach of the alleged duty was the proximate cause of (4) a legally recognized injury. *See First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999); *Cooney v. Chi. Public Schools*, 943 N.E.2d 23, 27 (Ill. App. Ct. 2010). Veradigm challenges only

---

[3] Plaintiffs bring their negligence claim on behalf of the putative nationwide class. Neither party contests that Illinois law applies to this claim; the Court thus considers the claim under Illinois law. *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), as amended (Jan. 25, 2017) ("If no party raises a choice of law issue to the district court, the federal court may simply apply the forum state's substantive law.") (cleaned up)

the last of these elements, arguing that Plaintiffs' injuries are not compensable in a claim for negligence. Plaintiffs allege that they have "suffered damages, including monetary damages, increased risk of future harm, loss of privacy, and fear, anxiety, and worry about their loss of control over their PHI." [51] ¶ 295. Veradigm attacks these damages on three bases.

First, Veradigm correctly argues that the mere risk of future harm cannot form the basis of a negligence claim. Plaintiffs do not contest this straightforward statement of Illinois law. *See Berry v. City of* Chicago, 181 N.E.3d 679, 688 (Ill. 2020) ("[T]hat an increased risk of harm is not, itself, an injury, is consistent with the traditional understanding of tort law.").

But Plaintiffs' remaining alleged injuries are cognizable in Illinois law. Veradigm argues Illinois law does not allow for a plaintiff to recover emotional damages in an action for negligence. But courts in this district have repeatedly held otherwise in the context of a data breach. *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2024 WL 1556298, at *2 (N.D. Ill. Apr. 10, 2024) ("A claim for negligence, however, 'is actionable if it directly causes emotional distress.'" (quoting *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 999 (N.D. Ill. 2013)); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024), at *7 (fear, anxiety, and worry about the status of, and the loss of control over, private health information sufficient to state a negligence claim under Illinois law). Plaintiffs' alleged emotional damages are thus sufficient for their negligence claim to survive.

16

Finally, Veradigm argues that Plaintiffs' claim for economic damages is barred by the economic loss doctrine. Under that doctrine, "state courts have generally refused to recognize tort liabilities for purely economic losses inflicted by one business on another where those businesses have already ordered their duties, rights, and remedies by contract." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 812 (7th Cir. 2018). "Courts see no reason to intrude into the parties' allocation of the risk when bargaining should be sufficient to protect the parties' interests, and where additional tort law remedies would act as something of a wild card to upset their expectations." *Id*. (internal quotation and citation omitted).

Where, as here, a plaintiff alleges that a defendant breached "a duty [that] arises outside of a contract between the parties, then recovery in tort for the negligent breach of that duty is not barred by the [economic loss] doctrine. *Flores v. Aon Corp.*, 242 N.E.3d 340, 361 (Ill. App. Ct. 2023) (allowing plaintiff to seek economic damages resulting from a data breach); *see also Olson v. Ferrara Candy Co.,* 275 N.E.3d 439, 459 (Ill. App. Ct. 2025), *petition for leave to appeal denied,* 273 N.E.3d 805 (Ill. 2025) (same).

Accordingly, Plaintiffs' negligence claim survives dismissal.

## IV.    Conclusion

For the stated reasons, Defendant's Motion to Dismiss [44] is denied.

17

E N T E R:

Dated: July 6, 2026

Mary M Rowland
_____