**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, JANET DOE, JENNIFER DOE, and JESSICA DOE, | ) | |
| Plaintiffs, | ) | No. 1:25-cv-10147 |
| v. | ) | Hon. Mary M. Rowland |
| VERADIGM LLC, | ) | |
| Defendant. | ) | |

# DEFENDANT VERADIGM LLC'S MOTION TO COMPEL DISCOVERY

Matthew C. Wolfe
Tara D. Kennedy
Esther Kumah
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com
ekumah@shb.com

***Attorneys for Defendant Veradigm LLC***

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 4

I. The Court should compel production of factual materials underlying Plaintiffs' allegations about Veradigm's FMH technical configurations. .......... 4

A. The factual materials sought by Veradigm are not privileged or subject to the work product doctrine. .......... 4

B. The discovery sought is highly relevant, and Plaintiffs may not "hide the ball" until later. .......... 6

C. By refusing to provide a privilege log, Plaintiffs have waived privilege. .......... 8

D. In the alternative, Veradigm has a substantial need for the materials. .......... 9

II. Plaintiffs' public statements relating to their medical conditions or patient status, and use of services similar to FMH, should be produced. .......... 10

CONCLUSION .......... 13

## INTRODUCTION

Veradigm is a healthcare technology and analytics company that offers a variety of software and services. Among these are personal health record systems used by patients to access and manage their healthcare information. The system at issue here is branded "FollowMyHealth" ("FMH") and is available either through a web browser or mobile app. In FMH, the data is owned by the patients, who voluntarily choose to use FMH. Plaintiffs allege that Veradigm's use of digital marketing tools on FMH caused their browsers or mobile applications to send "Protected Health Information" ("PHI") to third parties such as Google and Facebook.

Plaintiffs allege that Veradigm "knowingly and intentionally disclosed patients' PHI to third parties who exploited the information and used it for advertising. . . . Veradigm took patients' confidential communications and PHI and automatically sent them to Google [and others] . . . for the purpose of reaping the illicit financial gains from its criminal and tortious disclosures of patients' PHI." Second Amended Complaint ("SAC") ¶ 4. Plaintiffs claim Veradigm did so by deploying software on FMH that intercepted communications for the purpose of redirecting PHI to Google and Facebook. *See*, *e.g.*, SAC ¶¶ 53, 54, 194, 316, 317, 319, 320, 323-325. According to Plaintiffs, this information "typically contain[ed] the name of the website, folder, and sub-folders on the webserver; the name of the precise file requested; and the exact contents of the patients' communications." SAC ¶ 55. Plaintiffs allege that Veradigm and others used this patient information "for marketing purposes." SAC ¶ 9(e).

Veradigm does not recognize Plaintiffs' description of FMH. Based on Veradigm's understanding and investigation, FMH has never disclosed precise file names, patient communications, or other identifiable, private, patient data to Google, Facebook, or any other third party. In fact, Veradigm does not believe it has ever deployed Facebook's Meta Pixel in any

configuration of FMH. Put plainly, Plaintiffs' SAC describes a version of FMH that appears to have been invented by Plaintiffs.

The point of discovery is for the parties to understand the basis for each other's claims and defenses. F.R.C.P. 26(d). Accordingly, Veradigm served requests for production designed to resolve this very issue:

> DOCUMENT REQUEST NO. 11: All Documents, including technical analyses, supporting Your allegations that Veradigm set up its FMH solution, in its web-based or mobile application format, or any similar Veradigm product, to permit surreptitious capture and disclosure of personal health information to third parties like Google.
>
> DOCUMENT REQUEST NO. 12: All Documents, including technical analyses, supporting Your allegations that Veradigm disclosed personal health information to third parties like Google.

Ex. 1.[1]

These requests for production seek the documents supporting Plaintiffs' central allegations—namely, allegations such as that Veradigm set up FMH "to permit surreptitious capture and disclosure of personal health information to third parties like Google" and "that Veradigm disclosed personal health information to third parties like Google." *See*, *e.g.*, SAC ¶ 148 (alleging Veradigm intentionally designed FMH to "improperly and surreptitiously disclose Plaintiffs' and other Class Members' PHI to Google"). Given the extraordinary length and detail in Plaintiffs' SAC (98 pages and 334 paragraphs), surely Plaintiffs must have materials supporting such assertions. And if Plaintiffs' pre-suit investigation turned up evidence that Veradigm configured FMH to capture and disclose patient health information, forming the basis for this lawsuit, then that factual evidence is not privileged, and it should not be a secret.

[1] Veradigm served identical discovery requests to all four Plaintiffs and is attaching one set of supplemental responses to requests for production of documents from Plaintiff Jane Doe (Ex. 1) and supplemental answers to interrogatories from Plaintiff Jane Doe (Ex. 3), as examples. For purposes of this filing, Veradigm has redacted non-pertinent confidential information from these exhibits.

But Plaintiffs refuse to produce anything in response to these requests. Instead, Plaintiffs assert that *all* of the documents requested by RFPs 11 and 12 are protected by the attorney-client privilege and work product doctrine. Despite this, Plaintiffs have refused to even provide a privilege log. Ex. 2. Veradigm therefore is filing this motion to compel production of factual information in Plaintiffs' possession, custody, or control supporting the allegations that Veradigm collected and disclosed PHI to third parties.

<u>Additionally</u>, to better understand the support for the allegations in this case, and to defend against them, Veradigm sought documents and information regarding public posts and discussion of Plaintiffs' medical conditions that they claim were disclosed by Veradigm. These requests go directly to whether any purported injury or damages were proximately caused by Veradigm. Plaintiffs again refused to respond to these requests based on several objections, among them the attorney-client privilege and the work product doctrine. These requests seek *public social media posts*, posted by either Plaintiffs or another party, social media group memberships, and other related information. They are relevant, not burdensome to gather, and not the subject of any privilege.

The parties have met and conferred and are at issue. *See* Local Rule 37.1 Statement, *infra* at page 13. Veradigm therefore respectfully requests that the Court compel production of the following:

(1) All information in Plaintiffs' possession, custody, or control supporting the allegations in the SAC that Veradigm collected and disclosed PHI to third parties, as described in Section I below.

(2) All documents responsive to RFPs 5 and 6, and complete answers to related Interrogatories 7 and 9, as described in Section II below.

# ARGUMENT

## I. The Court should compel production of factual materials underlying Plaintiffs' allegations about Veradigm's FMH technical configurations.

Veradigm's requests seek the evidentiary support for the factual contentions in Plaintiffs' 98-page, 334-paragraph SAC regarding the alleged technical configuration and operation of tracking technology on FMH. Such contentions include:

- Veradigm "knowingly and intentionally disclosed patients' PHI to third parties who exploited the information and used it for advertising. . . . Veradigm took patients' confidential communications and PHI and automatically sent them to Google [and others] . . . for the purpose of reaping the illicit financial gains from its criminal and tortious disclosures of patients' PHI." SAC ¶ 4.
- Veradigm did so by deploying software on FMH that intercepted communications for the purpose of redirecting PHI to Google and Facebook. *See*, *e.g.*, SAC ¶¶ 53, 54, 194, 316, 317, 319, 320, 323-325.
- This information "typically contain[ed] the name of the website, folder, and sub-folders on the webserver; the name of the precise file requested; and the exact contents of the patients' communications." SAC ¶ 55.
- Veradigm and others used this patient information "for marketing purposes." SAC ¶ 9(e).

Plaintiffs do not claim the material is not relevant. They claim only that their pre-suit investigation, *including factual material*, constitutes protected work product.[2] As discussed next, that argument does not withstand scrutiny.

### A. The factual materials sought by Veradigm are not privileged or subject to the work product doctrine.

Veradigm agrees that counsel's notes, analyses, and impressions about what the FMH interface revealed, and their litigation strategy, are work product. However, the underlying

[2] Plaintiffs also have suggested that they are "laypeople" who cannot provide technical materials to Veradigm in discovery. Plaintiffs appear to be saying that all of the factual basis for their Complaint is controlled by and known to their attorneys. Assuming that is their position, that factual material is still in Plaintiffs' possession, custody, or control (and should have been disclosed by Plaintiffs' counsel to their clients long ago).

factual record of what the FMH interface showed Plaintiffs, forming the basis for their lawsuit—like screenshots of the pages Plaintiffs or their representatives visited, the technology configurations on those pages, and comparable contemporaneous records—is not. It is black-letter law that the work product doctrine "furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts." 8 Wright & Miller, *Federal Practice & Procedure*, § 2023.

Facts do not become privileged because a lawyer collected them. Courts in this district apply this principle to pre-suit investigations. For example, in one case, this Court addressed a discovery dispute in which the defendant claimed that factual material created and gathered both before and after the litigation commenced was subject to the work product doctrine. *Charvat v. Valente*, 82 F. Supp. 3d 713 (N.D. Ill. 2015) (Rowland, J.). The Court resoundingly rejected this argument: "the work-product doctrine does not protect factual information that a lawyer obtains when investigating a case." *Id*. at 719. "[D]ocuments that are purely factual in nature . . . must be produced." *Id*. "Facts are never privileged." *Id*. at 720.

In another case, the plaintiff sought "the identities of persons who [had] information or who [had] made statements relating to the claims or defenses in the case, the substance of the information they possess[ed], and the statements they [] made." *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005). The court compelled these responses, reasoning that the factual information was material and did not reveal counsel's impressions because the requests did not ask who had conducted the interviews or how counsel had selected them. *Id.* at 347-49. The court further observed that there is substantial authority holding that the work product doctrine does not protect documents attorneys obtain from third parties while

investigating a lawsuit. *Id.* at 347; *see also APS Express, Inc. v. Sears Holding Corp.*, No. 15 C 3275, 2017 WL 11886105, at *3 (N.D. Ill. Jan. 4, 2017) (plaintiff's summary of factual information developed in pre-litigation analysis was not privileged or work product because it formed the factual basis of plaintiff's fraud claim).

Veradigm's requests were framed the same way. Veradigm did not seek how counsel decided to conduct their investigation, who performed the investigation, in what order, or what counsel concluded from it. Rather, Veradigm asked for the factual evidence that forms the basis of Plaintiffs' claims, like what the FMH interface allegedly displayed to Plaintiffs regarding the use of the pertinent technology (including through their counsel), what information Plaintiffs supposedly observed FMH collecting and how, and what information Plaintiffs supposedly observed FMH transmitting and how. Collecting this factual information as part of a pre-litigation analysis does not shield the material from discovery.

### B. The discovery sought is highly relevant, and Plaintiffs may not "hide the ball" until later.

Plaintiffs put the technical configuration of FMH at issue by pleading it. The SAC's description of FMH does not match what Veradigm observes on its own product. Therefore, Veradigm is entitled to test and investigate that discrepancy to effectively defend the claims against it. As stated above, Plaintiffs spend dozens of pages of the SAC discussing Google, Facebook, Google and Facebook code and advertising technology, and their allegations that Veradigm provided information to Google, Facebook, and others. For example, the SAC details specifically that these disclosures include "a full-string, detailed URL to Google, typically containing the name of the website, folder, and sub-folders on the webserver; the name of the precise file requested; and the exact contents of the patients' communications." SAC ¶ 55. Plaintiffs also allege that Veradigm provided information to Facebook, including a user's

Facebook ID, and that the technology on FMH included the Meta Pixel. SAC ¶¶ 262(e), 320(d). After careful review and investigation, Veradigm has confirmed that it has never deployed or used the Facebook Meta Pixel in the configuration of FMH and thus these factual allegations, from Veradigm's perspective, appear to be impossible. Additionally, Veradigm's investigation indicates that it did not provide information such as the "exact contents of . . . patients' communications" to Google. If Plaintiffs have a factual basis for these allegations, it should not be a secret. It is in everyone's interest to have those facts shared now, early in discovery.

In similar situations, courts in this district have compelled discovery. For example, in *Last Atlantis Capital, LLC v. AGS Specialist Partners*, 292 F.R.D. 568 (N.D. Ill. 2013), the plaintiffs alleged defendants mishandled securities orders. *Id.* at 571-73. Defendants moved to compel answers to interrogatories explaining how plaintiffs had determined that the orders were mishandled. *Id.* at 574-75. The court granted the motion even though the materials had been prepared in anticipation of litigation because the discovery went "to the crux of the plaintiffs' case," and the court "fail[ed] to understand why the plaintiffs . . . want[ed] to hide the ball on the issues." *Id*; *see also* authority cited in Section I.A, *supra*.

Similarly, Veradigm's requests collectively seek the factual evidence that supports Plaintiffs' allegations that: (1) Veradigm configured FMH to permit the alleged surreptitious capture and disclosure of PHI; and (2) that Veradigm in fact disclosed such information. If Plaintiffs possess factual material showing otherwise, it is not something they may hold back. Moreover, to the extent Plaintiffs have already described the substance of their pre-suit observations in their pleadings without asserting privilege, they cannot now claim protection for the same material. *See APS Express*, 2017 WL 11886105, at *3 (privilege waived where party served information on adverse party in an interrogatory response under no claim of privilege).

### C. By refusing to provide a privilege log, Plaintiffs have waived privilege.

Parties asserting privilege over otherwise discoverable information are required to comply with Federal Rule of Civil Procedure 26(b)(5). The burden rests on the party resisting disclosure to establish that the information is privileged and should not be produced. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("mere assertion of a privilege is not enough"). A party claiming this protection must "make the claim expressly" and describe the nature of the withheld documents, communications, or tangible things in a manner that enables the opposing party to assess the claim. Fed. R. Civ. P. 26(b)(5); *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332 (N.D. Ill. 2001) (Rule 26(b)(5) expressly states that its purpose is to "enable other parties to assess the applicability of the privilege [asserted]"); ESI Order, Dkt. 48 at 11 (requiring logging of claimed pre-suit attorney work product and attorney-client communications).

The same principle applies to pre-suit investigative materials. In *Bigfoot*, defendants sought documents related to pre-suit materials, and plaintiffs asserted privileges, arguing that the documents "assist[ed] in making litigation strategy decisions." *Bigfoot 4x4, Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 1:22-CV-06758, 2024 WL 3161626, at *5 (N.D. Ill. June 25, 2024). The court declined to uphold plaintiffs' privilege assertions because they failed to produce a privilege log identifying the allegedly privileged communications and instead, merely offered broad conclusions asserting that the documents requested were protected by the attorney-client privilege. *Id.* at *6. The court explained that a proper privilege log should disclose information that would allow the opposing party and the court to evaluate the claim. *Id.* at 7 ("blanket assertion of attorney-client privilege . . . and work product . . . is insufficient to meet Plaintiff's burden under Rule 26(b)(5)(A)."). Additionally, the plaintiffs in *Bigfoot* did not produce a privilege log of the documents in

discovery or in response to the motion before the court. This resulted in a waiver of privilege: "'[T]he failure to provide a proper privilege log may result in waiver of any asserted privilege,' a finding that would also be appropriate here." *Id.* at *8 (quoting *Schaeffer v. City of Chicago*, 2020 WL 7395217, at *3 (N.D. Ill. Dec. 15, 2020)). Without an adequate privilege log, "[t]he Court has no way to determine whether the protection [Plaintiff] seek[s] is appropriate, which is [Plaintiff's] burden as the party asserting work product protection." *Id.*

Plaintiffs are therefore required to produce a privilege log for any discoverable information they contend is protected from disclosure, including pre-suit investigative materials. But they have flatly refused. Ex. 2. Thus, they have waived privilege. *Bigfoot*, 2024 WL 3161626, at *8; *Schaeffer*, 2020 WL 7395217 at *3; *see also Rao v. Bd. of Trustees of the Univ. of Illinois*, 2016 WL 6124436, at *6 (N.D. Ill. Oct. 20, 2016) (rejecting work product claim for investigation files where court was not "provided with any evidence regarding the contents of the investigative files; Defendants have not produced . . . even a general description of the documents that they seek to protect"); F.R.C.P. 26, Notes of Advisory Committee – 1993 Amendment ("[t]o withhold materials without [providing notice as described in Rule 26(b)(5)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection"). All relevant materials should be produced.

**D. In the alternative, Veradigm has a substantial need for the materials.**

Even if this Court were to determine that some portions of the responsive materials were work product and privilege was not waived, the documents remain discoverable on a showing of (1) substantial need and (2) inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Critically, courts review this burden on a scale, weighing the degree of attorney thought embedded in the material: the "less the lawyer's 'mental processes' are involved, the less will be the burden to show good cause." *Harper & Row Publishers, Inc. v.*

*Decker*, 423 F.2d 487, 492 (7th Cir. 1970). Here, there are likely no mental processes involved in the requested documents. For example, a screenshot or similar record of a page that shows how FMH configurations appear or appeared to Plaintiffs would be responsive and would merely reflect how the technology was coded or configured at the time Plaintiffs observed it (which they must have done in order to write the three complaints filed so far in this litigation); it would not disclose what counsel's impressions or strategies were in response.

Courts in this district have found substantial need for similar facts. *See*, *e.g.*, *United States ex rel. Lisitza v. Par Pharmaceutical Cos.*, No. 06 C 6131, 2014 WL 222727, at *2-3, *7 (N.D. Ill. Jan. 21, 2014) (defendant had substantial need for the information and could not obtain it without hardship because information sought was "at the heart of" the litigation). The same is true here: the configuration of FMH underpins all of Plaintiffs' claims in this case, and Veradigm cannot meaningfully investigate or defend against allegations whose basis is a secret.

Finally, Veradigm cannot obtain the documents and information by any other means, even though FMH is Veradigm's own technology. As explained above, the allegations in the SAC are fundamentally different from Veradigm's understanding of the actual configuration of FMH. Plaintiffs hold the only evidence of the conduct and implementation of technology that they allege.

## II. Plaintiffs' public statements relating to their medical conditions or patient status, and use of services similar to FMH, should be produced.

In addition to the above, Plaintiffs object to producing records reflecting specific and highly relevant records of their online conduct. As discussed next, these records go directly to Plaintiffs' theories of liability and damages, and could undermine those theories. Thus, they should be produced.

Plaintiffs claim that they used FMH to do things such as review test results, look at doctor's notes, and review information relating to various medical treatments. SAC ¶¶ 13-16. They allege that Veradigm intercepted and disclosed their confidential PHI to Google, Facebook, and others. SAC ¶¶ 150-160. Plaintiffs claim that one way they can tell this happened is that "After accessing [FMH] to review [their] treatment information, [Plaintiffs] began receiving advertisements on [their] social media account related to their [medical conditions]." SAC ¶¶ 13, 15, 16, 152, 157, 159. As a result, they claim "Veradigm harmed Plaintiffs' and Class Members' interest in privacy," "[s]ensitive and confidential information that Plaintiff and Class Members intended to remain private is private no longer," "Veradigm eroded the essential confidential nature of the provider-patient relationship," they suffered "fear, anxiety, and worry about their loss of control over their PHI," and other alleged harms. SAC ¶¶ 280, 295, 331.

But Plaintiffs could have revealed patient status, medical conditions, or treatment information in other ways. They could have posted on social media or similar sites that they were undergoing medical treatment or seeking advice about medical conditions. They could have joined online support groups for those with their medical conditions. They could have used patient portals that actually deployed advertising technology of the kinds Plaintiffs allege Veradigm used. Any of these actions could have provided Plaintiffs' allegedly private medical information to third parties or even the public at large.

Accordingly, Veradigm's RFPs 5 and 6 seek the following:

> DOCUMENT REQUEST NO. 5: All Documents relating to instances in which Your medical condition(s) or patient status(es) were disclosed online, whether by you or another party, including but not limited to social media posts, blog posts, message board posts, and online reviews in which Your medical condition(s) or patient status(es) were disclosed by You or someone else.

> DOCUMENT REQUEST NO. 6: All Documents relating to Your membership in online groups, such as Facebook groups, related to Your medical condition(s) or patient status(es).

Ex. 1.

These requests are tailored to discover Plaintiffs' expectation of privacy and sharing of their supposed private information with others and to develop alternative explanations for Plaintiffs receiving advertisements about their medical conditions. Veradigm also served related Interrogatories (7 and 9) asking Plaintiffs to disclose social media user names and any other alleged patient portals or similar systems they used.[3]

Again, the basis for these requests is simple. Plaintiffs allege that their medical conditions were improperly disclosed by Veradigm to Google, and support that allegation by asserting that they were shown advertisements relating to their medical conditions. SAC ¶¶ 13, 15, 16, 152, 157, 159. But there is another, more probable, explanation for these individualized advertisements, which is that Plaintiffs, while logged in to Google, used Google to conduct web searches (which Plaintiffs are producing), posted about their conditions, or visited websites relating to those conditions. If Plaintiffs did those sorts of things, that could explain why they received personalized advertisements—severing the purported causal chain to FMH and eliminating any injury supposedly caused by Veradigm.

---

[3] Those Interrogatories request:

> **INTERROGATORY NO. 7:** Identify all Google, Facebook, Instagram, TikTok, NextDoor, Twitter, WhatsApp, or similar accounts that You have ever used and the names, usernames, or identification numbers (e.g., Facebook ID) associated with any such accounts.

> **INTERROGATORY NO. 9:** Identify all patient portals or similar products that You have an account with other than the Veradigm FollowMyHealth solution or any similar Veradigm product.

Ex. 3.

As to Interrogatory Number 7, although Plaintiffs have identified what social media providers they have accounts with, they have refused to provide usernames. Plaintiffs refuse to answer Interrogatory Number 9 altogether. *See id.* at 17, 19.

All of this information is responsive, readily available, and not burdensome to produce.[4] The Court should order its production.

## CONCLUSION

For the foregoing reasons, Veradigm respectfully requests that the Court enter an order compelling Plaintiffs to produce the following:

(1) All documents responsive to RFPs 11 and 12, including information in Plaintiffs' possession, custody, or control supporting the allegations in the SAC that Veradigm collected and disclosed PHI to third parties.

(2) All documents responsive to RFPs 5 and 6, and complete answers to Interrogatories 7 and 9.

## CERTIFICATION UNDER NDIL LOCAL RULE 37.2

Pursuant to Local Rule 37.2, the undersigned certifies that after consultation and reasonable attempts to resolve differences with Plaintiffs, Veradigm and Plaintiffs have been unable to reach an accord. Counsel for Plaintiffs and counsel for Defendant met and conferred by videoconference on July 10, 2026, as well as by written correspondence, and discussed the parties' respective positions on whether discovery was warranted. Raina Borrelli, Brittany Resch, Hannah Price, and Mark Holden attended the July 10, 2026 videoconference for Plaintiff, and Matthew Wolfe and Tara Kennedy attended for Defendant. The parties ultimately did not reach an agreement.

---

[4] Plaintiffs did not substantiate any basis for burden or proportionality objections and therefore have waived them. *Clark Equip. Co. v. Lift Parts Mfg. Co.*, No. 82 C 4585, 1985 WL 2917, at *7 (N.D. Ill. Oct. 1, 1985) ("Naked assertion that the requested discovery is 'burdensome,' without a 'specific showing' of the burden involved, is insufficient to preserve the objection."); *Belcastro v. United Airlines, Inc.*, No. 17 CV 1682, 2019 WL 1651709, at *7 (N.D. Ill. Apr. 17, 2019), objections overruled, No. 17-CV-01682, 2020 WL 1248343 (N.D. Ill. Mar. 15, 2020) ("The Court cannot sustain a proportionality objection without a specific showing of the burden that the objecting party would endure and why it is disproportionate to the needs of the case.").

Dated: September 4, 2026

Respectfully submitted,

VERADIGM LLC

By: */s/ Matthew C. Wolfe*

Matthew C. Wolfe
Tara D. Kennedy
Esther Kumah
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
(312) 704-7700
mwolfe@shb.com
tkennedy@shb.com
ekumah@shb.com

***Attorneys for Defendant Veradigm LLC***

# CERTIFICATE OF SERVICE

I, Matthew C. Wolfe, an attorney, hereby certify that on **September 4, 2026**, I caused a true and correct copy of **DEFENDANT VERADIGM LLC'S MOTION TO COMPEL DISCOVERY** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Matthew C. Wolfe*